STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. PHILIP M. BERGER, PLAINTIFF IN ERROR.

Submitted October 1, 1940—Decided January 4, 1941.

Before Brogan, Chief Justice, and Justices Parker and Perskie.

For the state, *William A. Wachenfeld,* prosecutor of the pleas, and *Joseph E. Conlon,* first assistant prosecutor.

For the plaintiff in error, *Kessler & Kessler* (*Samuel I. Kessler,* of counsel).

The opinion of the court was delivered by

Perskie, J. The single question we are called upon to decide in this cause is whether the game operated by plaintiff in error is comprehended by our Gaming act (*R. S.* 2:135-1) which provides, *inter alia,* that "all playing for money or other valuable thing * * * with any * * * device having one or more figure or figures, number or numbers thereon, shall be guilty of a misdemeanor."

Plaintiff in error, hereafter referred to as defendant, was charged with having violated the quoted provision of the Gaming act, on March 20th, 1940. He waived indictment and trial by jury. On his application, consented to by the prosecutor of the pleas and approved by the court, he was tried at the Essex County Court of Special Sessions, Judge Brennan presiding.

No testimony was offered by or for defendant. The cause was submitted to the trial judge on the oral testimony of the arresting officers and on a written statement by defendant as to his method of operating the alleged illegal game. That

statement, on stipulation, or without objection, was read into the record.

The proofs thus submitted are free from dispute. They disclose that defendant operated and managed a motion picture theatre in Newark, New Jersey. On the evening of March 20th, 1940, pursuant to extensive advertisements, he conducted a game called "Payme," in addition to the regular showing of the advertised motion picture show. This game was played with cards (one was given to each patron upon entering the theatre and one to each person in the lobby of the theatre) on which five numbered squares were printed under each letter of the word "Payme." Each card was numbered differently. Patrons in the audience drew, by lot, small rubber balls from a basket. Each ball contained a letter and a number which, as drawn, were immediately announced. If the number announced appeared on his card, a player would punch out that square. When any player succeeded in punching out five squares in a horizontal, diagonal or vertical row, he would shout "Payme." After his card was checked, and found to be accurate, he was declared the winner of that game. One continuous game was played until fifteen winners were declared on the night of March 20th, 1940. Each winner went to the stage of the theatre and there selected one of fifteen discs. Beneath each disc selected was stated the value of a credit voucher redeemable in merchandise at L. Bamberger & Co., Newark, New Jersey, which voucher was then awarded to that person. The vouchers ranged in value from $1 to $5.

The charge of admission to the theatre to see the motion picture was thirty cents and included the right to play "Payme." Furthermore, as advertised, anyone who desired might, without any charge whatsoever, enter the lobby of the theatre and take part in the playing of the game. On the night in question, in fact, some twenty-five or thirty persons had gathered in the lobby and although they had paid nothing whatsoever to the theatre, took part in the game. One of these persons won one of the fifteen games, was admitted without charge to the theatre stage to select a disc and was then awarded a credit voucher.

Substantially, upon these proofs, the trial judge denied motions for a directed verdict of acquittal and in arrest of judgment, adjudged defendant guilty, and committed him to the care of the probation officer for the period of one year conditioned to pay a fine of $25 within the first week of his probation and to observe conditions of probation.

Defendant attacks the legality of his conviction. The contention is that the undisputed facts do not constitute a violation of the act upon which the charge was based. In support of that contention, the argument here, as below, divides itself into three correlated parts.

1. It is argued that since defendant did not actually participate in the game as a player, since he stood no chance of winning but could only lose, he (defendant) could not have been "playing for money or other valuable thing," and, therefore, could not have been guilty of gambling or gaming.

2. It is further argued that because the players did not contribute to, nor make up, the fund out of which the vouchers were paid, and since the players were not required to make any such contribution nor payment to the fund in order to participate in the game, there was no element of risk on the part of the players, and, thus there was no violation of the act.

3. Finally, it is argued that the awarding of the credit vouchers to the winning players was merely the awarding of a gratuitous "prize or premium" to them; and again, since no risk or loss was involved on the part of the players, they, the players, were not guilty of any violation of the act.

None of these arguments is sound. True, defendant did not participate personally in the game as a player but it is equally true (defendant frankly admitted it in his written statement) that he managed and operated the theatre in which the game, as planned and advertised by him, was played. Thus defendant, as one who aided, abetted and participated in the game was properly treated as a principal, if the game was, under the law, a misdemeanor. *Cf. State* v. *Woodworth*, 121 *N. J. L.* 78, 81; 1 *Atl. Rep.* (*2d*) 254.

We hold that the *playing* of the game was, as charged, a misdemeanor. The "valuable thing" to defendant was the

extra trade, the extra admission charges of thirty cents, which the playing of the game, as advertised, would and apparently did attract. Each player took the chance of getting some thing of value in addition to that of seeing the picture. How much of each thirty cents was paid for seeing the picture and how much for the opportunity to participate in the game to win a credit voucher is, of course, not made to appear. But obviously some portion thereof constituted the fund out of which the credit vouchers were paid.

The awarding of the credit vouchers was not the awarding of a mere gratuitous "prize or premium." The reliance upon the result of hazard is clear. In our opinion defendant clearly violated both the spirit and the letter of the act. *Cf. Wooden* v. *Shotwell (Court of Errors and Appeals)*, 24 *N. J. L.* 789, 795; *Market Plumbing, &c.*, v. *Spangenberger*, 112 *Id.* 46; 169 *Atl. Rep.* 660; *affirmed,* 114 *N. J. L.* 271; 176 *Atl. Rep.* 342.

In reaching the stated result we have not overlooked the fact that some 25 or 30 persons were permitted to enter the lobby and play the game without having purchased a ticket of admission. On the contrary, our result is strengthened thereby. For however ingenious, the stated circumstance is nothing other than a subterfuge, a brazen artifice employed for the clear purpose of thwarting the enforcement of the criminal law. The law reaches beyond the outer form and takes hold of the substance of the thing in issue, and conse-quently no dressing, however adroit, can make legal that which is illegal. *Cf. State* v. *Shorts et al.*, 32 *N. J. L.* 398, 402.

Judgment is affirmed, with costs.