36 N.J. Super. 521 (1955)
116 A.2d 588
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
MICHAEL M. KUZNITZ AND CORNELIUS REILLY, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued August 1, 1955.
Decided August 22, 1955.
*524 Before Judges HUGHES, HETFIELD and MARIANO.
Mr. Leo Kaplowitz argued the cause for the appellants (Messrs. Margulies & Kaplowitz, attorneys and of counsel).
Mr. John Lombardi argued the cause for the respondent (Mr. H. Russell Morss, Jr., Prosecutor of Union County, attorney).
The opinion of the court was delivered by MARIANO, J.S.C. (temporarily assigned).
Defendants were convicted before a jury for making book on horse racing contrary to N.J.S. 2A:112-3, which activity is characterized as a misdemeanor under the said statute, and they appeal.
While their argument is mainly addressed to the failure of the trial court to grant their respective motions for a judgment of acquittal at the close of the State's case, they also raise questions as to the admission of certain betting slips *525 into evidence and as to whether the jury's verdict was against the weight of the evidence.
The pivotal witness in this case is one Donelli. His testimony indicates that in January 1953 he made arrangements with the defendants, at defendant Kuznitz' store located in Linden, New Jersey, to take bets made by himself and those of fellow employees at the Merck Co. plant located in Rahway. The arrangements continued until November 3, 1953 when all concerned were arrested.
The plan was that Donelli would take bets during his lunch hour and phone them to Reilly or Kuznitz at one or another of a series of telephone numbers located in Linden, New Jersey, which were given to Donelli by Kuznitz when the original arrangements were made at Kuznitz' store. Initially Donelli would pay off bettors that won with money that he took in from unsuccessful bettors and account daily with Kuznitz. On several occasions during the existence of the daily accounting arrangements there was insufficient funds to pay the successful bettors and Donelli would phone Kuznitz and so advise him and Kuznitz in turn would leave money at his store for Donelli to use to make payment. Later these daily arrangements were changed to a weekly basis. On Saturday or Sunday an accounting would take place in Kuznitz' store. Donelli kept slips which he used to prove his weekly accounts. If there was any discrepancy in the accounts kept by Donelli and the defendants, and on several occasions there were, it became necessary to compare Donelli's slips with those of the defendants. The defendants' slips contained the registration and recording of the bets phoned to them in Linden by Donelli. Donelli's slips for the latter part of October were found in his room and were introduced into evidence by the State.
Donelli's testimony as to Reilly's activity is to some extent corroborated by Charkowski, his wife, and his mother-in-law at whose home there was located one of the telephones, the number of which was supplied to Donelli by Kuznitz. They testified that Reilly, with their permission, used the telephone five days a week, sitting by it most of the afternoon. All of *526 these witnesses stoutly refused to implicate Kuznitz, even when confronted with signed statements made to the police to the effect that Kuznitz was involved in the arrangements for the use of the phones. Similarly, all refused to admit that there was any arrangement to pay for the use of the phone although Mrs. Carkowski admitted that $25 a week mysteriously appeared on the dining room table which she used without inquiring as to its origin.
The case against Reilly, who failed to testify nor was called in defense by Kuznitz, was further strengthened by the testimony of a police officer, conceded to be an expert, that certain pieces of paper found in Reilly's room in Linden, New Jersey, were records and registrations of bets made on horse racing. Donelli's testimony against Kuznitz was entirely uncorroborated except for the fact disclosed by his own testimony, in defense, that large sums of money were found in his store. Kuznitz stated that the money was used to cash checks for teachers at a nearby school, but the secretary of the board of education testified in rebuttal that the time the money was found was between pay days for the teachers.
On a motion for judgment of acquittal the test is whether there is any legal evidence before the jury from which an inference of guilt can be legitimately drawn. State v. Bricker, Jr., 99 N.J.L. 521 (E. & A. 1924); State v. Piccotti, 12 N.J. 205 (1953); State v. Huff, 14 N.J. 240 (1954); State v. Rhams, 14 N.J. 285 (1954); State v. O'Shea, 16 N.J. 1 (1954). On such a motion the trial judge is obliged to accord to the State's case the benefit of all legitimate inferences of which the proof was susceptible. State v. Rhams, supra; State v. Cammarata, 12 N.J. Misc. 115 (Sup. Ct. 1934), affirmed 114 N.J.L. 274 (E. & A. 1934).
In a jury trial it is not the function of the court to weigh the evidence or to determine the probabilities. This is a function reserved to the jury alone.
In challenging the discretionary action of judicial tribunals the defendants must first establish that the court of original jurisdiction exercised its power capriciously and *527 in violation of settled legal principles. "Capriciously" as employed by the court has the significance of arbitrary. State v. Davidson, 116 N.J.L. 325 (Sup. Ct. 1936). The exercise of discretionary authority will not be disturbed on appeal or review unless it has been clearly abused. State v. Weleck, 10 N.J. 355 (1952). The defendants have failed to establish wherein the trial court clearly abused the discretion reposed in it.
Defendants have called to our attention State v. Fox, 12 N.J. Super. 132 (App. Div. 1951), as authority for the statement that in order to justify a conviction the circumstances on which the State relies must be consistent with the defendant's guilt and more important they must be inconsistent with any rational theory of innocence. The cited case is clearly distinguishable because it dealt with the question of whether the verdict was against the weight of the evidence in a circumstantial case. In the present case the problem before us namely is whether the trial court should have granted a motion for judgment of acquittal in a case based upon direct evidence.
The evaluation of the State's case must be determined, not as the defendant seems to urge, by fragmenting the proof and considering each factor in severe solitude from the rest, but by assaying the case in its entirety. State v. Rhams, supra.
We are satisfied that the proofs on the State's case amply sufficed to raise a jury question whether the defendants were engaged in the crime of "bookmaking" within the test laid down by our courts. State v. Morano, 134 N.J.L. 295 (E. & A. 1946); State v. Rhams, supra; State v. Lennon, 3 N.J. 337 (1949); State v. Hozer, 19 N.J. 301, which our Supreme Court decided on June 27, 1955. After a careful consideration of the testimony we are convinced that the trial court was justified in denying the defendants' motion for judgment of acquittal at the close of the entire case.
Appellant contends that the betting slips seized from Donelli were erroneously admitted into evidence. The bets in the instant case were recorded twice, once by Donelli at *528 Rahway when not done by the bettor himself and once by Reilly acting for both defendants in Linden, and, at times, by Kuznitz himself in Linden. Donelli also testified that there were times when he phoned his own personal bets to the defendant Kuznitz in Linden. There was testimony that at the weekly settlements in Kuznitz' store in Linden that two sets of records would be checked against each other, particularly when discrepancies appeared. It is clear that although the said slips were seized from Donelli they constituted part of the record used by Donelli and the two defendants in the bookmaking activity in which all three participated, and we believe they were evidential to show their modus operandi. However, even if said slips were not binding upon the defendants we fail to see how their admission into evidence prejudiced the defendants at the hands of the jury. The jury was aware of the fact that Donelli was a confessed "bookmaker." The issue of fact determined by the jury was that the defendants participated in his illegal operation and we cannot conceive how the admission of said slips could have influenced the jury to attach greater weight to Donelli's testimony implicating the defendants.
Justice Jacobs, speaking for our present Supreme Court in State v. Orecchio, 16 N.J., at page 129, stated as follows:
"The sound administration of criminal justice in our democracy requires that both the end and the means be just. The accused, no matter how abhorrent the offense charged nor how seemingly evident the guilt, is entitled to a fair trial surrounded by the substantive and procedural safeguards which have stood for centuries as bulwarks of liberty in English speaking countries. This, of course, does not mean that the incidental legal errors, which creep into the trial but do not prejudice the rights of the accused or make the proceedings unfair, may be invoked to upset an otherwise valid conviction; under these circumstances it would be grossly unjust to the State and its people to grant a new trial, and in recent days this court has not hesitated to deny such relief to the defendant. See State v. LeFante, 14 N.J. 584 (1954); State v. Witte, 13 N.J. 598 (1953), certiorari denied, 347 U.S. 951, 74 S.Ct. 675; State v. Vaszorich, 13 N.J. 99 (1953), certiorari denied, 346 U.S. 900, 74 S.Ct. 219, 98 L.Ed. 400 (1953). But cf. Knowlton, Criminal Law and Procedure, 8 Rutgers L. Rev. 78, 87 (1953). Where, however, the legal errors are of such magnitude as to *529 prejudice the defendant's rights or, in their aggregate have rendered the trial unfair, our fundamental constitutional concepts dictate the granting of a new trial before an impartial jury. * * *"
Defendants argue that the State failed to prove any criminal activity in Linden, New Jersey, as alleged in the indictment, and therefore the verdict was against the weight of the evidence. The gist of this argument seemingly appears to be that Donelli, located at a distant place from Linden, New Jersey, to wit, Rahway, both within Union County, actually took the bets from the bettors, noted them on slips of paper prepared by him or the bettors themselves, and therefore the defendants' activity in Linden lacked an essential ingredient of the crime charged. The settled definition of "bookmaking" under the statute, is "the making or taking and recording or registering of bets or wagers on races and kindred contest." State v. Morano, supra [134 N.J.L. 295, 47 A.2d 422]; State v. Lennon, supra. It is true that the defendants' method of operation presents a novel factual situation somewhat similar to that presented in State v. Hozer, supra, for the application of the definition. Although Donelli directly made, took, and recorded the bets in Rahway the same bets were relayed to the defendants, by phone, in Linden where they were also recorded. Both records of the betting slips were produced daily and weekly at the defendant Kuznitz' store in Linden for the final accounting when Kuznitz received the profits or paid the losses resulting from said operation. It is obvious that the entire transaction was not completed until the final accounting in Kuznitz' store in Linden. Even if Donelli's acts in Rahway constituted the completed offense of "bookmaking" as far as he was concerned, the same bets were replaced by Donelli with the defendants in Linden where they were taken and recorded. No matter what view is taken of the transaction, the defendants participated in the illegal operation in Linden so that their contention that the State failed to prove any acts in Linden is without merit. In any event, as Justice Heher noted in his opinion in the Morano case, supra, and repeated by Justice Brennan in the Hozer case, supra, "our State has long been *530 committed through constitutional prohibitions to an `all embracive' policy against all forms of gambling, except as specifically sanctioned, and `the design of the provision against bookmaking is * * * to enforce the general anti-gaming policy.'" The statute is to be interpreted in that light and, when so considered, brings defendants' operation in Linden, New Jersey within the sweep of "bookmaking" and "bookmaking practices." Donelli simply worked at the finger-tips of the hands which directed and controlled the criminal enterprise.
Obviously, "bookmaking" as it is commonly understood may be carried on in as many different ways as human ingenuity can devise. The present case is but one of many systems resorted to by individuals employed in a nefarious business with the prime purpose of avoiding detection. The law reaches beyond the outer form and takes hold of the substance of the thing in issue, and consequently no dressing, however adroit, can make legal that which is illegal. State v. Berger, 126 N.J.L. 39 (Sup. Ct. 1941).
The betting transactions between the bettor and the "bookmaker" may occur in many ways such as in a personal interview, or over the phone or by means of other communication media, or through solicitors, agents or representatives located in various localities. It is not uncommon for a bookmaker to have the bettor record or write the bet himself. People v. Solomon, 174 App. Div. 144, 160 N.Y.S. 942; State v. Morano, supra. The bookmaker is aware of the criminality of his pursuit and thus he is cautious and furtive. Certainly he has no desire to call attention to what he is doing, or the place or places where the transaction with the bettors is actually carried on. No matter how complete the evidence found on him at the time of his arrest showing his commission of the crime, the place or places where the transaction with the bettors were actually carried on will seldom appear or can rarely be discovered except as they are revealed by the accused himself or one acting in concert with him.
That no gambling paraphernalia was found in the possession of the defendant Kuznitz did not entitle him to *531 an acquittal. The record of the trial is replete with testimony by Donelli showing Kuznitz to have been a principal. Not only were the original arrangements made in his store in Linden but he took the winnings and paid the losses. Justice Heher, speaking for our former Court of Errors and Appeals, in State v. Morano, supra, at page 301, stated:
"* * * Under the common law, all who are present, aiding and abetting in a felony, are treated as principals, while in the case of misdemeanors all who aid, abet or participate are deemed principals of equal guilt; and the statute under consideration (R.S. 2:135-3, now N.J.S. 2A:112-3) is in this regard merely declaratory of the common law."
N.J.S. 2A:85-14 provides as follows:
"Any person who aids, abets, counsels, commands, induces or procures another to commit a crime is punishable as a principal."
Defendants, in arguing the point that the verdict was against the weight of the evidence, complain because of the lack of corroboration of Donelli's testimony. It is to be noted that it is well settled in New Jersey that a jury may convict a prisoner upon the testimony of an accomplice alone, if, in their judgment, it is entirely credible and worthy of belief. State v. Spruill, 16 N.J. 73 (1954).
A verdict will not be set aside as against the weight of the evidence except where it clearly appears it is the result of mistake, passion, prejudice or partiality. State v. Cooper, 10 N.J. 532, at page 554 (1954); State v. Boccadoro, 105 N.J.L. 352 (E. & A. 1929); State v. Hauptmann, 115 N.J.L. 412 (E. & A. 1935); State v. Cole, 136 N.J.L. 606 (E. & A. 1948); State v. Cordasco, 2 N.J. 189 (1950); State v. Donohue, 2 N.J. 381 (1949); State v. Pierce, 4 N.J. 252 (1950); State v. Goodman, 9 N.J. 569 (1952); State v. Peterson, 10 N.J. 155 (1952).
In our view there was a plenitude of proof to sustain the charge laid in the indictment and we detect no reversible error. Accordingly the judgment in the court below is affirmed.