442 P.2d 148

Irving L. BAKER, Appellant,

v.

WALSTON & COMPANY, Inc., Appellee.

No. 2 CA–CIV 394.

Court of Appeals of Arizona.

June 18, 1968.

Rehearing Denied July 30, 1968.

Review Denied Oct. 8, 1968.

Richard L. Keefe, Tucson, for appellant.

Holesapple, Conner, Jones, McFall & Johnson, by A. O. Johnson, Tucson, for appellee.

HATHAWAY, Chief Judge.

Irving L. Baker filed an action against Walston & Company, Inc., charging that the defendant fraudulently induced him to purchase United States Vitamin and Pharmaceutical Corporation (hereinafter referred to as UVT) stock on the misrepresentation that a corporate merger was pending. Baker alleged that he purchased 2,100 shares of said stock from November 6, 1961 through April, 1962, for the sum of $80,-434.72 and sold the stock for $58,183.84.

The issues were joined in the answer to the second amended complaint, which by stipulation was accepted also as answer to the third amended complaint. The third amended complaint contained nine counts which the plaintiff has summarized in his brief as follows:

"(1) Count I: Common law fraud.

(2) Count II: An action under the Securities Act of 1933.

(3) Count III: Incorporation of portions of Count I, and, in addition, alleging the violation of A.R.S. 44–1991 and 44–2001 relating to a scheme or artifice to defraud.

(4) Count IV: Allegation that sales of UVT were not made by a registered salesman. Action brought pursuant to A.R.S. Secs. 44–1842 and 44–2001. Relief prayed for rescission.

(5) Count V: Incorporation of portions of Count I, and, in addition alleging the violation of A.R.S. Secs. 44–1991 and 44–2001 relating to paragraph 2 of A.R.S. Sec. 44–1991 concerning untrue statements of material fact. Relief prayed for rescission.[1]

(6) Count VI: Not applicable; settled during trial.

(7) Count VII: Same as Count III, except that relief prayed for was for damage.

(8) Count VIII: Same as Count IV, except that relief prayed for was for damage.

(9) Count IX: Same as Count V, except that relief prayed for was for damage."

The answer set up general denials and the affirmative defense of statute of limitations as to Counts III, IV and V, and an additional affirmative defense was alleged that the plaintiff was barred as to some of the counts through election of remedies. The cause was tried to a jury and during the trial the court directed a verdict for the defendant on Counts IV and VIII. At the

---

1. Although not directly presented in the instant cause, we feel it necessary to comment upon the plaintiff's alternative prayers for damages and rescission. The alleged fraud gave plaintiff an option to seek rescission or damages. However, since these remedies are inconsistent, the plaintiff will be required to elect his remedy. Mahurin v. Schmeck, 95 Ariz. 333, 390 P.2d 576 (1964). We are not called upon to pass upon the effectiveness of rescission sought against a stockbroker.

conclusion of the plaintiff's case, the court directed a verdict in favor of defendant on the remaining counts, with the exception of Count VI which was settled during trial.

On this appeal the differences between the parties center on the sufficiency of the evidence of misrepresentation of a material fact. In view of the directed verdict against the plaintiff we will consider the record in the light most favorable to the plaintiff in our effort to determine if a jury question was presented. Reeves v. Arizona Aggregate Association Health and Welfare Fund, 102 Ariz. 595, 435 P.2d 829 (1967).

The plaintiff's dealings with the defendant, a stockbrokerage firm, began on July 21, 1961. He had previously, "* * * on rare occasions * * *" purchased securities through another firm. Apparently these purchases were of a minor nature and the securities were limited to several hundred dollars in value. The plaintiff's dealings with the defendant firm, started in a relatively minor fashion, during which period of time he sought and received advice from the defendant's salesman, Mr. Bee.

On November 4, 1961, Mr. Bee phoned the plaintiff and advised him that he had information concerning stock in UVT. Later that day the plaintiff went to the defendant's office to further discuss UVT stock with Mr. Bee. There, a conversation ensued in which the plaintiff, Mr. Bee and Mr. McPherson, local manager of the defendant's Tucson office, participated.

Mr. Bee told the plaintiff that he had attended a dinner party for certain of the defendant's personnel the night before and that Mr. Tabell, executive vice president and director of research from the defendant's New York office, was asked if he would give the office the type of Christmas present he had previously given them, being special information on stock. Bee advised the plaintiff that he had learned that a tender in the amount of $50 per share had been made to UVT by Plough Incorporated; that UVT at the time was selling in the upper thirties; and that "such privi-leged information" would enable Baker to "* * * make purchases which definitely would enhance in price upon announcement of the merger." McPherson confirmed the information given and elaborated on Tabell's authoritative status. Bee stated that he could not pass this gift on to many people, but had to reserve it for his best clients.

The plaintiff purchased and sold UVT stock over a period of several months. The discussed mergers did not materialize and the stock declined in value. During this time he had conversations with Mr. Bee. Also, he was a party to a number of telephone and wire communications with Mr. Tabell of New York. The record is not entirely clear as to the sequence of the communications. The plaintiff testified that during one of the telephone conversations with Tabell he was advised to hold the shares because Sterling Drug had made serious overtures for the position of Plough and that if Plough were out Sterling would be in. A subsequent conversation was had between the plaintiff, Mr. Bee and either Tabell or his son, to the effect that the UVT shares should be held because a merger would be announced soon.

The plaintiff became convinced that there would be no merger when he received a letter dated June 27, 1962, from Tabell referring to "merger possibilities." The plaintiff testified that at all prior times, merger had been referred to as a fact, not a possibility.

The representations of which the plaintiff complains, and which we conclude support his action in statutory fraud, fall into the following categories:

1. That a tender to purchase stock had been made;

2. That a merger had taken place;

3. That another company had entered the picture and "* * * had made serious overtures for the position voided by Plough * * *."

A.R.S. § 44–1991, on which the counts in statutory fraud are premised, provides:

"It is a fraudulent practice and unlawful for a person, in connection with

a transaction or transactions within or from this state involving an offer to sell or buy securities, or a sale or purchase of securities, including securities exempted under § 44–1843 and including transactions exempted under § 44–1844, directly or indirectly to do any of the following:

1. Employ any device, scheme or artifice to defraud.

2. Make any untrue statement of material fact, or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

3. Engage in any transaction, practice or course of business which operates or would operate as a fraud or deceit."

Since § 77q[2] of the Securities Act of 1933 is almost identical to A.R.S. § 44–1991 and since Arizona case law in the area is sparse, we will look to the federal cases.

Representations in the three categories we have set forth, conjoined with the stockbroker's opinion that a handsome profit would be realized from inevitable stock appreciation, followed by stock purchases in reliance thereon, suffice to support an action in statutory fraud. Securities and Exchange Commission v. Macon, D.C., 28 F.Supp. 127 (1939); Securities and Exchange Commission v. Broadwall Securities, Inc., D.C., 240 F.Supp. 962 (1965). Knowledge of falsity is not a necessary element of a cause of action based upon A.R.S. § 44–1991.

Concerning our first category of misrepresentation, the defendant argues that the record is silent on whether a tender had or had not been made and that fraud will not be presumed. The plaintiff points out that interrogatories were submitted to Mr. Solmson, executive vice president and director for Plough Corporation. He responded that "no really serious negotiations took place between the period of November, 1961 through and including May, 1962." It is the plaintiff's position that this statement negates the representations by the defendant's agents that Plough had made a tender to UVT for $50 a share. The defendant answers that Solmson did not say that a tender had not been made and it was incumbent upon the plaintiff to prove the falsity of the alleged representations. We believe that the statement that "no really serious negotiations" had taken place would justify a jury's conclusion that a tender had not been made.

In determining whether a verdict should be directed, verity must be imputed to testimony which tends to establish the plaintiff's case. Reeves v. Arizona Aggregate Association Health and Welfare Fund, supra. We are of the opinion that a prima facie cause of action in statutory fraud is substantiated in the record.

■ The plaintiff contends that the court erred in holding that Maurice Gusinow, one of the defendant's employees who assisted Harry Bee from time to time, was not acting as a salesman.[3] In Counts IV

---

**2.** "§ 77(q). Fraudulent interstate transactions

   (a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

   (1) to employ any device, scheme, or artifice to defraud, or

   (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light

of the circumstances under which they were made, not misleading, or,

   (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser."

**3.** A.R.S. § 44–1801(10) provides:

   "In this chapter, unless the context otherwise requires:

   *        *        *        *

   "10. 'Salesman' means an individual, other than a dealer, employed or appointed or authorized by a dealer to sell securities in this state. The partners or executive officers of a registered

and VIII of his first amended complaint, filed 20 months after the original complaint, the plaintiff alleged that the defendant had sold him stock through an unregistered salesman, Maurice Gusinow, and sought rescission in Count IV and damages in Count VIII. The defendant urges that the trial court's direction of verdict is in any event affirmable on these counts since they were barred by the statute of limitations. These two counts were not set forth in the original complaint and the defendant contends that the amendment bringing them into the third amended complaint constituted a new cause of action, barred by the one year statute of limitations applicable thereto.[4] The plaintiff counters that the amendment relates back to the time of filing of the original complaint and is therefore timely.

Rule 15(c) of the Rules of Civil Procedure, 16 A.R.S., governing the relation back of amendments, provided:[5]

> "Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."

The occurrences set forth in the original complaint related to fraudulent misrepresentation. Counts IV and VIII of the first amended complaint sought relief based upon different operative facts, namely that the stock was sold through an unregistered salesman. The amendment amounted to more than an amplification of the original transaction. The plaintiff's argument that "said cause of action still remains as a tort action" ignores that the plaintiff's claim for relief is expanded through the amendment to include an additional statutory tort dependent upon the proof of sales by an unregistered salesman and independent of the claim for relief for fraud upon which the original complaint was bottomed. An amendment does not relate back if it sets forth "a wholly different legal liability or obligation." Simons v. County of Kern, 234 Cal.App.2d 362, 44 Cal.Rptr. 338, 342 (1965). We hold, therefore, that Counts IV and VIII were barred and affirm the trial court in this regard.

We find it unnecessary to rule upon other points raised in this appeal. The judgment is reversed and the cause is remanded for new trial on the remaining counts.

MOLLOY, J., and JOHN A. McGUIRE, Superior Court Judge, concur.

NOTE: Judge HERBERT F. KRUCKER having requested that he be relieved from consideration of this matter, Judge JOHN A. McGUIRE was called to sit in his stead and participate in the determination of this decision.

---

dealer shall not be deemed salesmen within the meaning of this definition." A.R.S. § 44–1842, subsec. A provides:
"A. It is unlawful for any dealer to sell or purchase or offer to sell or buy any securities, or for any salesman to sell or offer for sale any securities within or from this state unless the dealer or salesman is registered as such pursuant to the provisions of article 9 of this chapter."

4. A.R.S. § 44–2004:
"A. No civil action shall be maintained under this article to enforce any liability founded upon a violation of §§ 44–1841 or 44–1842 unless brought within one year after such violation occurs.
"B. No civil action shall be brought under this article to enforce any liability founded upon a violation of article 13 unless brought within one year after discovery of the fraudulent practice upon which the liability is founded, or after such discovery should have been made by the exercise of reasonable diligence, and in no event shall such action be brought more than three years after the fraudulent practice occurred."

5. Rule 15(c) was amended in 1966 but the first sentence, with which we are concerned, remained unchanged.