**UNITED STATES of America**

v.

**James BARONE et al.**

**Appeal of William ARDINE.**

**No. 71–1342.**

United States Court of Appeals, Third Circuit.

Argued Jan. 3, 1972.

Decided March 2, 1972.

H. David Rothman, Matson & Rothman, Pittsburgh, Pa., for appellant.

David M. Curry, Asst. U. S. Atty., Pittsburgh, Pa. (Richard L. Thornburgh, U. S. Atty., Pittsburgh, Pa., on the brief), for appellee.

Before HASTIE and MAX ROSENN, Circuit Judges, and McCUNE, District Judge.

## OPINION OF THE COURT

HASTIE, Circuit Judge.

Appellant Ardine was charged in separate counts of an indictment with conspiracy to pass counterfeit obligations and with the substantive offense of receiving and selling certain counterfeit obligations. He was brought to trial along with three other persons, two of whom pleaded guilty, and convicted by a jury on the conspiracy count, although acquitted on the substantive count. On this appeal from that conviction several contentions are advanced.

■■ First Ardine argues that the evidence is insufficient to justify a finding that he was party to the alleged conspiracy. The conspiracy count charged a scheme "to receive, possess, pass, sell and utter counterfeited . . . Twenty Dollar ($20.00) Federal Reserve Notes. . . . " The substantive count, upon which Ardine was acquitted, charged him with actually receiving counterfeit notes from Bruno, one of the alleged conspirators, with the intention of passing the notes as genuine. There was evidence that Bruno, who pleaded guilty, had possession of the counterfeit notes and at various times before he approached Ardine had met with other alleged conspirators to discuss and arrange for the distribution and marketing of the notes.[1] The prosecution sought to prove Ardine's association with the scheme through Bruno's testimony of a meeting between him and Ardine at Ardine's apartment in Pittsburgh. According to Bruno, on that occasion he explained that he was arranging for others to pass the notes and to share the proceeds with him. Bruno also testified that Ardine agreed to participate both by taking and passing some of the counterfeit himself and by introducing Bruno to someone else who might be interested in buying some of the notes, and in addition that Ardine did receive some of the notes and paid Bruno part of an agreed price. Bruno said too that Ardine took him the same

1. The fact that one has adhered to a criminal scheme after it has been initiated and partly carried out and without knowing all of its details, does not prevent his knowing participation in the enterprise from making him a member of the overall conspiracy. Blumenthal v. United States, 1947, 332 U.S. 539, 68 S.Ct. 248, 92 L.Ed. 154; United States v. Lester, 3d Cir. 1961, 282 F.2d 750, cert. denied, 364 U.S. 937, 81 S.Ct. 385, 5 L.Ed.2d 368; United States v. Ward Baking Co., E.D. Pa.1963, 224 F.Supp. 66.

evening to a bar and introduced him to a man who, in conversation with Bruno after the introduction and after Ardine had withdrawn a short distance, declined to become involved.

There was also some indication during the cross-examination of Bruno that he owed Ardine money at the time he allegedly approached him about aiding in the disposition of counterfeit notes.

 It is a principal contention of the appellant that because the jury acquitted him of receiving and passing counterfeit, it could not consistently have found that on the same occasion he joined in the conspiracy. However, Bruno's testimony was that after explaining the criminal scheme he solicited Ardine's participation both as a purchaser and passer of notes and as an intermediary to introduce Bruno to another prospective participant. The jury could have found that Ardine refused to participate to the extent of personally passing counterfeit but did undertake to introduce Bruno to another prospect.[2] The jury may well have been influenced, and properly so, by the fact that the introduction was corroborated by the man to whom Ardine introduced Bruno, while Bruno's testimony that Ardine himself undertook to pass counterfeit was not corroborated. Moreover, the indication that Bruno owed Ardine money lent some support to the theory that Ardine accepted money, which he may have thought to be genuine, from Bruno as repayment at the same meeting at which he agreed to further the criminal scheme to the limited extent of making a helpful introduction.[3] Of course such an introduction, with knowledge of its purpose as Bruno testified, would constitute both adherence to the conspiracy and an overt act toward its accomplishment.

In these circumstances, we can find no inconsistency between the conviction on the conspiracy count and the acquittal on the substantive count.

 One other issue merits brief discussion. In cross-examining Bruno, the government's principal witness, counsel for appellant's co-defendant asked the witness whether he had been threatened during the pendency of this prosecution. Apparently, the purpose of this inquiry was to suggest that the witness had been coerced into giving false testimony unfavorable to the defense. Accordingly, on redirect examination the prosecutor was permitted to question the witness in detail about the threats and to introduce into evidence anonymous threatening letters he had received. These letters threatened harm to him and his family if he should aid the prosecution. Thus, the cross-examination about threats may have resulted in the creation of an impression unfavorable to the defense in the minds of the jurors. However, there was nothing that identified any person as the source of the threats. Moreover, the court in its charge was careful to instruct the jury that there was no evidence that the defendants had "sought to influence the testimony of Joseph Bruno," that the evidence of threats from unidentified sources "is totally incompetent to permit such an inference" and "must be considered by you only with respect to Joseph Bruno's frame of mind as a witness."

The handling of this episode by the court was entirely proper and afforded Ardine the protection to which he was entitled, indeed, as much protection as

---

2. Such knowing adherence to a corrupt scheme suffices to support a conviction without necessity for showing that the accused participated in, or even knew about overt acts committed by other conspirators. United States v. Boyance, 3d Cir. 1964, 329 F.2d 372, cert. denied sub nom Feldman v. United States, 377 U.S. 965, 84 S.Ct. 1645, 12 L.Ed.2d 736;

United States v. Piampiano, 2d Cir. 1959, 271 F.2d 273.

3. The light sentence imposed upon Ardine —a suspended prison sentence of one year with probation for a period of two years and a $100 fine—shows that the court took into account that, as found by the jury, Ardine's role in the conspiracy was a very small one.

the circumstances permitted, from the consequences of a co-defendant's introduction of the issue of threats in an unsuccessful effort to discredit Bruno.

We find no merit in any other contention of the appellant.

The judgment will be affirmed.