STATE OF NORTH CAROLINA v. WALTER LEE MILEY

No. 71

(Filed 21 December 1976)

1. Criminal Law § 76— understanding of constitutional rights — voluntariness of statement

Evidence was sufficient to support findings by the trial court and such findings were sufficient to support the court's conclusion that defendant was advised of his constitutional rights, no threats or promises or coercion of any sort were used, and statements made by defendant were made freely, voluntarily and understandingly.

2. Criminal Law § 75— confession — voluntariness — no jury issue

The law in N. C. does not require that the issue of voluntariness of a confession be submitted to the jury.

3. Homicide § 20— photographs — bloody shirt — admissibility for limited purpose

The trial court in a homicide prosecution did not err in the admission under limiting instructions of four photographs of deceased's body, nor did it err in the admission of a bloody shirt worn by deceased at the time of the fatal shooting.

4. Criminal Law § 79— statements of co-conspirator — admissibility

Testimony of a State's witness concerning statements by a homicide victim's wife was admissible as that of a co-conspirator where the evidence tended to show that the witness was present when defendant was employed to commit the murder in question, and during the planning of the murder; and the witness gave defendant $100 from the victim's wife in partial payment for the murder.

APPEAL by defendant pursuant to G.S. 7A-27 (a) from *Rousseau, J.,* at the 1 March 1976 Session of FORSYTH Superior Court. Defendant was tried upon an indictment, proper in form, for the murder of Nathaniel Hairston. He was convicted of second degree murder and sentenced to life imprisonment.

The State introduced evidence tending to show that during the evening hours of 11 November 1975, Irene Hairston offered

defendant $1500 (payable when the life insurance proceeds on the victim's life were disbursed) to kill her husband, Nathaniel Hairston. Defendant agreed to perform the task and was paid either $100 or $200. Mrs. Hairston gave defendant a loaded shotgun and he then sat in the Hairstons' front yard waiting for Mr. Hairston to return from work.

At approximately 1:00 a.m. on 12 November 1975, Mr. Hairston returned from work. Defendant failed to fire at Mr. Hairston as he walked from his car into his house. Several minutes later, defendant, shotgun in hand, walked to the back of the house where he saw Mr. Hairston's shadow through a window. Defendant opened the back door of the house and shot Mr. Hairston in the chest. Mr. Hairston died as a result of the injuries received by the shot.

Defendant testified in his own behalf. His testimony is essentially the same as that offered by the State. However, defendant stated that he had very little recollection of the events of the evening because he had been smoking marijuana and drinking beer. He further stated that he went to the back door of the Hairston house and placed the shotgun on the brick steps leading up to the back door. Defendant testified that some of the bricks were loose and that he slipped on the steps. As he slipped, he felt the gun discharge. After the gun discharged, he fled the scene. He stated that at no time did he see Mr. Hairston.

Other facts necessary to the decision of this case will be discussed in the opinion.

*Attorney General Rufus L. Edmisten and Assistant Attorney General Ralf F. Haskell for the State.*

*Donald M. Voncannon for defendant appellant.*

MOORE, Justice.

[1] Defendant first contends that the trial court erred in finding that defendant's statement to B. J. Grindstaff of the Forsyth County Sheriff's Department was voluntarily given and that the defendant knowingly waived the right to have an attorney present at the time of making his statement. Defendant does not allege that he was not advised of his constitutional rights and in fact concedes he was. Rather, he argues that he did not fully understand his rights as presented to him because of his age, background and limited education. Defendant fur-

ther argues that after stating he wanted an attorney present, he was induced to make an incriminating statement.

*Miranda v. Arizona,* 384 U.S. 436, 16 L.Ed. 2d 694, 86 S.Ct. 1602 (1966), laid down the rules governing the admissibility of statements obtained from an accused during custodial police interrogations. When the admissibility of an in-custody confession is challenged, the trial judge must conduct a *voir dire* hearing to determine whether the requirements of *Miranda* have been met and whether the confession was voluntarily and understandingly made. If there is a material conflict in the evidence on *voir dire,* the trial judge must resolve the conflict and find the facts upon which he bases his ruling. Because the trial judge is able to observe the demeanor of the witnesses during their testimony and weigh their credibility, his findings are conclusive on appeal, if supported by the evidence. *State v. Blackmon,* 280 N.C. 42, 185 S.E. 2d 123 (1971); *State v. Smith,* 278 N.C. 36, 178 S.E. 2d 597, *cert. den.,* 403 U.S. 934 (1971). The fact that defendant was youthful and that he made the challenged statements in the presence of police officers does not render the statements inadmissible, in the absence of mistreatment or coercion by the officers. *State v. Thompson,* 287 N.C. 303, 214 S.E. 2d 742 (1975); *State v. Murry,* 277 N.C. 197, 176 S.E. 2d 738 (1970).

At the *voir dire* hearing held on the admissibility of defendant's statement, Officers Grindstaff and Stover of the Forsyth County Sheriff's Department testified on behalf of the State. Officer Grindstaff stated that on 3 December 1975 he advised defendant of his "Miranda rights" by the use of questions taken from a printed form. As he advised defendant of each right, the officer would place a "yes" or "no" answer at the end of the question contained on the form. Defendant's responses to these questions showed that he understood his right to remain silent; that he had the right to stop answering questions at any time; and that he understood that any statement he made could be used against him in court. When asked by Grindstaff if he wanted an attorney present before he answered any questions, defendant's response on the printed form was "Yes." Officer Grindstaff testified that defendant then stated that he was willing to answer questions and would like to have an attorney appointed later. Defendant then replied "No" to the question of whether he wanted a lawyer present during questioning. Grindstaff further stated that he explained the waiver of rights form

to defendant and that defendant signed the form. Defendant then made a statement which implicated him in the murder of Mr. Hairston.

Officer Stover testified that on 5 December 1975 he saw defendant and Officer Grindstaff at Forsyth Memorial Hospital. At this time, Grindstaff asked defendant to initial a change on the printed form dealing with the "Miranda rights." This change was to correct a mistake which Grindstaff had made, and consisted of scratching through the "Yes" response given to the question of whether defendant wanted an attorney present prior to any questioning and substituting a "No, but I would like one appointed later" response. Stover testified that defendant indicated that he had made such a response to Grindstaff, but refused to initial the change because he had been told by his attorney not to do so.

Defendant testified that he recalled signing the waiver of rights form. He stated that Officer Grindstaff "did not really encourage me to go ahead and make a statement," and that defendant did not really think that he needed a lawyer. Further, defendant stated that "After I signed the form, I said I would make a statement and have a lawyer appointed later."

Upon the evidence outlined above and other testimony tending to show that no coercion, promises or threats were made to defendant, the trial judge made findings of fact which amply supported his conclusion that:

> " . . . [T]he defendant was advised of his rights in accordance with the MIRANDA decision; that no threats or promises were made to the defendant to influence him to make any statements and that the statements given to Officer Grindstaff at approximately 10:00 AM on December 3, 1975, were freely, voluntarily, and understandingly made and that any statement the defendant made in response to said interrogation is admissible in the trial of this case."

Any conflict in the evidence was resolved by the trial judge's findings of fact, and his ruling will not be disturbed on appeal. *State v. Gray,* 268 N.C. 69, 150 S.E. 2d 1 (1966), *cert. den.,* 386 U.S. 911, 87 S.Ct. 860, 17 L.Ed. 2d 784 (1967). This assignment is overruled.

[2] In connection with the issue of defendant's statement to the police, defendant contends that the trial court should have

submitted the question of voluntariness to the jury. Counsel for defendant, citing *State v. Hill,* 276 N.C. 1, 170 S.E. 2d 885 (1969), concedes that the present law in North Carolina does not require the issue of voluntariness of the confession to be submitted to the jury, but requests that this Court reconsider its position on this question. In *State v. Hill, supra,* at 14-15, 170 S.E. 2d at 894, Justice Higgins, speaking for the Court, said:

> "Defense counsel also argue that the voluntariness of the confession should have been one of the issues submitted to the trial jury. Under North Carolina procedure, voluntariness is a preliminary question to be passed on by the trial judge in the absence of the jury. *State v. Vickers,* 274 N.C. 311, 163 S.E. 2d 481; *State v. Gray,* 268 N.C. 69, 150 S.E. 2d 1; *State v. Barnes,* 264 N.C. 517, 142 S.E. 2d 344. This procedure, we think, is approved by the Supreme Court of the United States. In *Jackson v. Denno,* 378 U.S. 368 (Footnote 19), the Court uses this language: ' . . . (T)he states are free to allocate functions between the judge and the jury as they see fit.' "

We see no reason to change this well established rule and refrain from doing so in this case.

[3] By his next assignment of error, defendant submits that the trial court erred in admitting into evidence, under instructions limiting their use to the purpose of illustrating the witnesses' testimony, four photographs depicting the body of the victim. Defendant also submits that the court committed error in admitting into evidence the shirt worn by the victim at the time of his death.

Defendant entered a plea of not guilty, thereby requiring the State to meet its burden of proving its entire case beyond a reasonable doubt. It was an essential part of the State's theory that the victim was shot by the defendant in the chest with a shotgun from outside, as the victim was walking toward the back entrance of his house. Each of the exhibits introduced illustrated the testimony of the State's witnesses concerning the location of the deceased's body when found and the location of the fatal wound.

In *State v. Cutshall*, 278 N.C. 334, 347-48, 180 S.E. 2d 745, 753-54 (1971), this Court stated:

"Properly authenticated photographs of the body of a homicide victim may be introduced into evidence under instructions limiting their use to the purpose of illustrating the witness' testimony. Photographs are usually competent to be used by a witness to explain or illustrate anything that it is competent for him to describe in words. The fact that the photograph may be gory, gruesome, revolting or horrible, does not prevent its use by a witness to illustrate his testimony. [Citations omitted.]

\* \* \*

"It is not error to permit clothing of a victim or other articles to be introduced into evidence which bear stains or appear corroborative of the theory of the State's case, or which 'enable the jury to realize more completely the cogency and force of the testimony of the witness.' [Citations omitted.]"

The court therefore did not err in the admission of these photographs under limiting instructions or in admitting the shirt worn by deceased at the time of the fatal shooting. *State v. Cutshall, supra; State v. Young*, 287 N.C. 377, 214 S.E. 2d 763 (1975); *State v. Crowder*, 285 N.C. 42, 203 S.E. 2d 38 (1974). *See also* 1 Stansbury, N. C. Evidence § 34 (Brandis rev. 1973).

[4] Defendant also alleges that the trial court erred in admitting the testimony of Sharon Fay Mills Wilson regarding statements made in her presence by Irene Hairston to defendant. These statements by Mrs. Hairston related to the plan by which Mr. Hairston would be murdered and to a payment of money to defendant for performing the murder.

In *State v. Conrad*, 275 N.C. 342, 348, 168 S.E. 2d 39, 43 (1969), this Court stated:

"The general rule is that when evidence of a prima facie case of conspiracy has been introduced, the acts and declarations of each party to it in furtherance of its objectives are admissible against the other members. [Citations omitted.] Consideration of the acts or declarations of one as evidence against the co-conspirators should be conditioned upon a finding: (1) a conspiracy existed; (2)

the acts or declarations were made by a party to it and in pursuance of its objectives; and (3) while it was active, that is, after it was formed and before it ended. [Citations omitted.]"

*See also State v. Branch*, 288 N.C. 514, 220 S.E. 2d 495 (1975); 2 Stansbury, N. C. Evidence § 173 (Brandis rev. 1973). A criminal conspiracy has been defined as "the unlawful concurrence of two or more persons in a wicked scheme—the combination or agreement to do an unlawful thing or to do a lawful thing in an unlawful way or by unlawful means." *State v. Goldberg*, 261 N.C. 181, 202, 134 S.E. 2d 334, 348 (1964). *See also State v. Horton*, 275 N.C. 651, 170 S.E. 2d 466 (1969); 3 Strong, N. C. Index 3d, Conspiracy § 3 (1976).

Applying the above stated principles to the case at bar, the testimony of Sharon Fay Mills Wilson was admissible as that of a co-conspirator. Ms. Wilson was present when defendant was employed to commit the murder, and during the planning of the murder. She gave defendant $100 from Mrs. Hairston in partial payment for the murder. This was sufficient to establish a *prima facie* case of conspiracy for the purpose of introducing the testimony of the co-conspirators.

In his brief, defendant concedes that a *prima facie* case of conspiracy was shown and that the statements were admissible under present North Carolina law. He contends, however, that we should reexamine our rule which permits the statements of one co-conspirator to be used against another co-conspirator. In the light of *State v. Conrad, supra,* and its analysis of both the law of this jurisdiction and the pertinent United States Supreme Court cases, we see no need to reexamine our position.

Defendant finally contends that his motion for nonsuit should have been granted; or that after verdict, his motion to set aside the verdict as being against the greater weight of the evidence should have been granted. Defendant's counsel concedes that there was sufficient evidence introduced at trial to repel these motions. We agree with defendant's counsel that there was ample evidence to submit the case to the jury, and see no need to review the facts or the law on this point.

An examination of the entire record discloses that defendant received a fair trial, free from prejudicial error. The verdict and judgment must therefore be upheld.

No error.