618 P.2d 604

**STATE of Arizona, Appellee,**

v.

**Robert Harlan GUNNISON, Jr., Appellant.**

**No. 4853–PR.**

Supreme Court of Arizona,
In Banc.

Sept. 22, 1980.

Rehearing Denied Oct. 21, 1980.

Stephen D. Neely, Pima County Atty. by Alan D. Davidon, Deputy County Atty., Tucson, for appellee.

Jack L. Lansdale, Jr., Tucson, for appellant.

CAMERON, Justice.

On 21 September 1978, defendant Robert Harlan Gunnison, Jr., was found guilty of five counts involving violations of Chapter 12 (sales of securities), Title 44 of the Arizona Revised Statutes. The Court of Appeals, Division Two, reversed as to three counts (Counts 23, 166 and 167) and affirmed as to Count 1, conspiracy to sell securities in violation of A.R.S. § 44–1991 and § 13–331,[1] and Count 2, fraud in the sale of securities in violation of A.R.S. § 44–1991 and § 44–2036(A), as amended. We agree with the Court of Appeals in their reversal of Counts 23, 166 and 167, and their affirmance in Count 2 for the reasons stated in their opinion in *State v. Gunnison,* 127 Ariz. 115, 618 P.2d 609 (App.1979) and in the companion case of *State v. O'Brien,* 123 Ariz. 578, 601 P.2d 341 (App.1979). We granted review pursuant to A.R.S. § 12–120.24 and Rule 31.19, Arizona Rules of Criminal Procedure, 17 A.R.S., to answer only one question: Must the State show scienter[2] to prove a criminal conspiracy to sell securities in violation of A.R.S. § 44–1991(2)?

In 1975, Gunnison was the president of Arizona Realty and Mortgage Trust, a corporation which managed several other corporations, most of which were involved in the development and/or sale of subdivision lots within the State of Arizona and most of which suffered substantial cash flow problems resulting in an inability to construct projected improvements in their subdivisions. Gunnison thus acted as an informal "receiver" for these ailing businesses.

One of the land companies in his control was Consolidated Mortgage Corporation, which had previously been run by Nathan "Ned" Warren. One method by which Consolidated raised money was through liquidation of assets, including wholesale disposal of lots and sales of mortgages they held as mortgagees. Most, if not all, of the mortgages liquidated by Gunnison went to Equitable Mortgage Company, which, in turn, sold the mortgages to the public. Equitable's president was Thomas O'Brien, a friend of both Gunnison and Warren.

Gunnison, O'Brien, Warren and several other participants in the dealings of Equitable and Arizona Realty were indicted by a Pima County Grand Jury for numerous alleged violations of state securities laws and for conspiracy to commit such violations. The defendant was named in 148 counts of the 173 count indictment. The cases of all indicted, with the exception of O'Brien and Gunnison, were disposed of through plea negotiations. On 14 December 1977, O'Brien was convicted, after trial to a jury, of 30 counts. In September of 1978, Gunnison was tried on the five counts.

The defendant waived his right to a jury. The parties stipulated that Gunnison's bench trial would include the testimony given in the O'Brien trial, which had been heard by the same judge, and that the trial court would be governed by the legal principles set forth in the jury instructions given in the O'Brien trial. Gunnison was convicted of all five counts and sentenced to five concurrent prison terms of one to three years. From this judgment and sentence he appeals.

There was extensive argument in the trial court concerning the scienter which the State must prove in order to convict the defendant. Gunnison attempted to show that he did not have the specific intent to commit the crime; that he acted in good

---

1. All citations to criminal statutes in this opinion are to the Arizona Revised Statutes in force prior to 1 October 1978, when the most recent criminal code and laws revised pursuant to it became effective.

2. "Scienter" is used throughout this opinion in its general sense, to mean any mental state necessary to make an act a criminal offense. It thus includes a range of possibilities, from mere awareness of one's actions, to intentional evil–doing.

faith because he relied on statements made by an attorney and an official of the Corporation Commission that the contemplated sales were "all right."

The trial court, in excluding evidence of good faith in the O'Brien trial, stated:

"evidence or any comment upon the issue of whether * * * O'Brien knew that his conduct was unlawful * * * is neither relevant or material."

In Gunnison's trial the court restated its position that scienter was not an element of the crime of conspiracy to violate A.R.S. § 44–1991(2), and that to convict the defendant the State need not prove intentional wrongdoing or "evil motive."

A.R.S. § 44–1991 reads as follows:

"It is a fraudulent practice and unlawful for a person, in connection with a transaction or transactions within or from this state involving an offer to sell or buy securities, or a sale or purchase of securities, including securities exempted under § 44–1843 and including transactions exempted under § 44–1844, directly or indirectly to do any of the following:

"1. Employ any device, scheme or artifice to defraud.

"2. Make any untrue statement of material fact, or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

"3. Engage in any transaction, practice or course of business which operates or would operate as a fraud or deceit."

The criminal statute under which defendant was prosecuted in Count 1 read in part as follows:

"A person is guilty of conspiracy in the second degree if, with the intent to commit or to have another person commit, any action constituting any felony other than those listed in subsection A, he conspires with one or more persons to engage in or cause the commission of such." A.R.S. § 13–331(B).

a. Does A.R.S. § 44–1991(2) require scienter?

The interpretation of subsection 2 of A.R.S. § 44–1991 has been subject to different interpretations by the two Divisions of our Court of Appeals. In *Washington National Corporation v. Thomas*, 117 Ariz. 95, 570 P.2d 1268 (App.1977) and *Baker v. Walston & Company*, 7 Ariz.App. 590, 442 P.2d 148 (1968), it was held that a violation of subsection 2 of A.R.S. § 44–1991 does not require a guilty knowledge, or scienter. This position has been forcefully reiterated in the opinion in this case of the Court of Appeals, Division Two, in the matter of *State v. Gunnison*, supra.

On the other hand, the Court of Appeals, Division One, in the case of *Greenfield v. Cheek*, 122 Ariz. 70, 593 P.2d 293 (App. 1978), held that as to subsection 2, scienter, or guilty knowledge, was a necessary element of the violation of subsection 2 and that good faith would be a proper defense. We approved this interpretation by the Court of Appeals, Division One, of A.R.S. § 44–1991(2) in *Greenfield v. Cheek*, 122 Ariz. 57, 593 P.2d 280 (1979), expressly overruling anything to the contrary in *Washington National Corporation v. Thomas*, supra, and *Baker v. Walston & Company*, supra. Later we reaffirmed our position in a supplemental opinion to *State v. Superior Court of Maricopa County*, 123 Ariz. 324, 599 P.2d 777 (1979). Both the Court of Appeals, Division One, in *Greenfield*, supra, and this court in *State v. Superior Court*, supra, relied upon the United States Supreme Court case of *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976) which interpreted the federal counterpart of A.R.S. § 44–1991, 15 U.S.C. § 77q(a), § 17(a) of the 1933 Act. All of these cases were civil cases.

■ Although we are not bound by the interpretation placed by the United States Supreme Court on the federal statute, it is helpful, for consistency in the application of the law, to be harmonious with the United States Supreme Court. Unless there is a good reason for deviating from the United States Supreme Court's interpretation, we

will follow the reasoning of that court in interpreting sections of our statutes which are identical or similar to federal securities statutes. The United States Supreme Court has stated:

> " * * * the language of § 17(a)(2), which prohibits any person from obtaining money or property 'by means of any untrue statement of a material fact or any omission to state a material fact,' is devoid of any suggestion whatsoever of a scienter requirement. As a well–known commentator has noted, '[t]here is nothing on the face of Clause (2) itself which smacks of *scienter* or intent to defraud.' III L. Loss, Securities Regulation 1422 (2d ed. 1961)." *Aaron v. Securities and Exchange Commission,* 446 U.S. 680, 696, 100 S.Ct. 1945, 1955, 64 L.Ed.2d 611, 626 (1980).

■ We therefore hold that, as to civil cases, scienter is not an element of a violation of A.R.S. § 44–1991(2), even though it may be an element of A.R.S. § 44–1991(1). Anything to the contrary in *State v. Superior Court of Maricopa County,* supra, and *Greenfield v. Cheek,* supra, is overruled.

### b. Scienter for criminal violations

■ Even if we agree that scienter is not a necessary element of a civil violation of subsection 2 of A.R.S. § 44–1991, it does not follow that scienter is not a necessary element of a criminal conspiracy to violate subsection 2 of A.R.S. § 44–1991. § 44–1991 is a civil statute. It is not a criminal statute unless other statutes make it so. A.R.S. § 44–2036(A), for example, makes it a crime to violate A.R.S. § 44–1991. This does not mean, however, that we can dispense with the requirement of scienter for a criminal conspiracy conviction.

The crime of conspiracy has been widely regarded as involving a consciously criminal agreement and is for that reason blameworthy and punishable in itself: "conspiracy imports a corrupt agreement between not less than two with guilty knowledge on the part of each." *Morrison v. California,* 291 U.S. 82, 92, 54 S.Ct. 281, 285, 78 L.Ed. 664, 671 (1934). See also, *State v. Burkett,* 344 So.2d 868, 869 (Fla.App.1977) ("criminal intent to commit a substantive offense"); *State v. Lennon,* 3 N.J. 337, 343, 70 A.2d 154, 157 (1949) ("sinister combination * * far more perilous * * * than the criminal intent of a single individual"); *People v. Rosenthal,* 91 Misc.2d 750, 754, 398 N.Y.S.2d 639, 642 (1977) ("corrupt agreement * * entered into with a criminal intent to do an unlawful act"); *State v. Miley,* 291 N.C. 431, 437, 230 S.E.2d 537, 541 (1976) ("unlawful concurrence * * * in a wicked scheme"); *Commonwealth v. Steinberg,* 240 Pa.Super. 139, 157–58, 362 A.2d 379, 389 (1976) ("common understanding * * * that the participants are joined together to perpetrate an unlawful act").

■ This criminality of intent, together with the increased danger believed to result from group effort, justify the arrest and punishment of conspirators when their crimes are merely inchoate; and without regard to whether a planned offense is ever completed:

> " * * * For two or more to confederate and combine together to commit or cause to be committed a breach of the criminal laws is an offense of the gravest character, sometimes quite outweighing, in injury to the public, the mere commission of the contemplated crime. It involves deliberate plotting to subvert the laws, educating and preparing the conspirators for further and habitual criminal practices. And it is characterized by secrecy, rendering it difficult of detection, requiring more time for its discovery, and adding to the importance of punishing it when discovered." *United States v. Rabinowich,* 238 U.S. 78, 88, 35 S.Ct. 682, 685, 59 L.Ed. 1211, 1215 (1915).

See also, *United States v. Haldeman,* 559 F.2d 31, 113 (D.C.Cir.1976), cert. den. 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977) ("intending with bad purpose either to disobey or disregard the law"); *United States v. Mora,* 598 F.2d 682, 683 (1st Cir. 1979) ("specific intent to violate the substantive statute"); *United States v. Cangiano,* 491 F.2d 906 (2nd Cir.), cert. den. 419 U.S. 904, 95 S.Ct. 188, 42 L.Ed.2d 149

(1974); *United States v. Barone*, 458 F.2d 1027 (3rd Cir. 1972); *United States v. Powell*, 564 F.2d 256, 258 (8th Cir. 1977) ("agreement to disobey, or to disregard, the law") cert. den. 435 U.S. 904, 98 S.Ct. 1449, 55 L.Ed.2d 495 (1978); *United States v. Thompson*, 493 F.2d 305 (9th Cir.), cert. den. 419 U.S. 834, 95 S.Ct. 60, 42 L.Ed.2d 60 (1974); *United States v. Andrews*, 585 F.2d 961 (10th Cir. 1978).

Conspiracy is a crime that requires a mens rea, or specific intent, even if the crime the conspirators are agreeing to commit does not in itself require such intent.

We agree with the California court that

" * * * even though a conspiracy has as its object the commission of an offense which can be committed without any specific intent, there is no criminal conspiracy absent a specific intent to violate the law. That is, to uphold a conviction for conspiracy to commit a 'public welfare offense' there must be a showing that the accused knew of the law and intended to violate it." *People v. Marsh*, 58 Cal.2d 732, 743, 376 P.2d 300, 307, 26 Cal.Rptr. 300, 307 (1962).

Accord, *United States v. Ehrlichman*, 546 F.2d 910 (D.C.Cir.1976), cert. den. 429 U.S. 1120, 97 S.Ct. 1155, 51 L.Ed.2d 570 (1977); *Commonwealth v. Benesch*, 290 Mass. 125, 194 N.E. 905 (1935); *People v. Harris*, 294 N.Y. 424, 63 N.E.2d 17 (1945); *People v. Powell*, 63 N.Y. 88 (1875).

Because the trial court in the present case specifically ruled that no intent to violate a known law need be shown for the State to prove a conspiracy charge, and because evidence of good faith was rejected, Gunnison's conspiracy conviction must fall.

The decision of the Court of Appeals in reversing convictions on Counts 23, 166 and 167 is approved. The decision affirming conviction on Count 2 is also approved. The decision affirming the conviction on Count 1 is set aside and the matter remanded to the trial court for further proceedings consistent with this opinion. So much of the opinion of the Court of Appeals, Division Two, which affirmed the judgment of guilt and sentence as to Count 1 is, by this opinion, disapproved.

STRUCKMEYER, C. J., and HAYS and GORDON, JJ., concur.

HOLOHAN, Vice Chief Justice (specially concurring):

Although I prefer to adhere to our previous decision in *Greenfield v. Cheek, supra*, which approved the ruling of Division One of the Court of Appeals, the majority of the court prefers, for sake of uniformity, to accept the federal position that scienter is not an element of a violation of A.R.S. § 44–1991(2). As I understand the position of the court this ruling applies only to civil cases brought under the cited statutes.

I join with the majority in holding that scienter is not required in civil cases brought for violation of subsection 2 of A.R.S. § 44–1991. In any criminal prosecution brought under A.R.S. § 44–2036 for a violation of A.R.S. § 44–1991(2), I believe that scienter is required.