499 P.2d 762

**John R. M. WILSON, Appellant,**

v.

**TUCSON GENERAL HOSPITAL, an Arizona corporation, Appellee.**

**No. 2 CA–CIV 1079.**

Court of Appeals of Arizona, Division 2.

July 20, 1972.

Rehearing Denied Aug. 22, 1972.

Review Denied Oct. 10, 1972.

**32**

Jack B. O'Dowd, O'Dowd, Fahringer & Diamos, by Erik M. O'Dowd, Tucson, for appellant.

Merchant, Lohse & Bloom, by Cliffton E. Bloom, Tucson, for appellee.

HOWARD, Judge.

This appeal concerns a suit brought by appellant, John R. M. Wilson, a mortgage broker, for a 2% brokerage commission alleged to have been earned by him by reason of his services provided to appellee, Tucson General Hospital, an Arizona corporation, in securing a loan for them in the amount of $2.1 million. Appellant's complaint alleged a count for breach of an agreement for payment of a 2% brokerage commission; a count of prevention and frustration of performance of that agreement by conspiracy between Tucson General Hospital and the lender, B. C. Ziegler & Co., a Wisconsin corporation; a count charging wrongful revocation of agency by the hospital; and a count based upon *quantum meruit*. After trial to the court, the complaint against B. C. Ziegler & Co. was dismissed and that judgment of dismissal is not appealed. The court also entered judgment in favor of appellee, Tucson General Hospital, and against the plaintiff and it is from that judgment which the plaintiff has appealed to this court.

Briefly, the facts leading to the bringing of this lawsuit are as follows: John Wilson had dealings with Tucson General Hospital in 1961 and 1962, in attempting to arrange for a $500,000 "refinancing loan" for the hospital from the Ziegler Co. The hospital, however, on March 21, 1962, notified both Mr. Wilson and the Ziegler Co. that it had decided not to accept the proposed loan. Wilson claims that in late 1963, after seeing a newspaper article announcing a large expansion program at the hospital, he contacted the hospital administrator, a Mr. C. D. Kron, and agreed with him to look for a lender to finance the expansion, at a 2% brokerage commission.

He then contacted the Ziegler Co. again and continued to keep contact with that company and the hospital through the years 1963 to 1966, when Ziegler Co. did loan the hospital $2.1 million. Wilson claims that when, in 1966, B. C. Ziegler & Co. committed to the hospital for a loan in the amount of $2.1 million, as a result of a direct contact by Mr. Kron with the Ziegler Co., the hospital breached its agreement with him and rendered the hospital liable to him for the 2% commission.

Wilson claims that there existed a continuity of dealings between him, the hospital and the Ziegler Company, throughout the period of 1963 to 1966; that the loan which Ziegler committed to make in 1966 (which the hospital subsequently accepted) was the same loan which he had agreed with the hospital to broker in 1963; and that by reason of the continuity of the development of that loan and of his dealings with the parties, he is entitled to the 2% commission for having procured the Ziegler Co. as the lender of the hospital's expansion financing.

The hospital takes the position that these undisputed facts show that even if Wilson and Kron, the administrator, made an agreement in 1963 providing for a 2% commission to Wilson if he obtained financing for the hospital, Mr. Kron was not authorized by the hospital board to enter into such an agreement. The hospital also claims that the loan which was consummated in late 1966 with the Ziegler Co. was "not the same loan" as that discussed in late 1963 by Wilson and Kron.

■■■ The trial court made 18 findings of fact and arrived at 8 conclusions of law upon which judgment was based. In reviewing findings of fact on appeal, we are required to accept them as true unless they are clearly erroneous or unsupported by any credible evidence in the record. Rule 52(a), Ariz.R.Civ.P., 16 A.R.S.; Bass Investment Co. v. Banner Realty, Inc., 103 Ariz. 75, 436 P.2d 894 (1968); Marquess v. Spaner, 15 Ariz.App. 342, 488 P.2d 698 (1971). We further must view the record

in a light most favorable to upholding the judgment of the trial court. Kubby v. Crescent Steel, 105 Ariz. 459, 466 P.2d 753 (1970).

Appellant raises six questions on appeal:

1. Was there an agreement for the payment of a 2% brokerage commission for securing financing for the hospital, made between the Hospital Administrator and Appellant?

2. Did Appellant perform the agreement, *i. e.*, was Appellant the "procuring agent" of the financing obtained by the hospital from B. C. Ziegler & Company?

3. Did the hospital administrator have authority, (actual or apparent), to bind the hospital to payment of a brokerage commission?

4. If not, did the hospital in any event ratify the brokerage agreement?

5. Did the hospital breach the agreement with Appellant, or wrongfully revoke his agency?

6. If not, is the hospital bound to pay Appellant the reasonable value of his services based upon *quantum meruit*, (and if so, what is that value)?

Questions one and two of the above were answered specifically in the negative by the trial court's findings of fact. Finding of Fact No. 12 provides:

"12. That the Hospital Administrator C. D. KRON, did not ask the Plaintiff to perform any services for the Defendant Hospital, and did not agree on behalf of the Hospital to pay for any services."

Finding of Fact No. 16 provides:

"16. That the Plaintiff was not the procuring mortgage broker as pertained to the mortgage and bond financing which was obtained by the Defendant, TUCSON GENERAL HOSPITAL from the Defendant, B. C. ZIEGLER AND COMPANY, during the years 1966 and 1967."

■■■ The evidence presented at the trial supports the finding that any agency rela-

tionship which may have existed between Tucson General and appellant was terminated by the letter of March 21, 1962, whereby the hospital informed both the Ziegler Co. and Wilson that it was not going to accept the loan offer which Wilson had procured. Between 1962 and 1966, the hospital, because of its continuing expansion in capital improvements, was in a position to seek and in fact did obtain funds from sources other than Ziegler Co. While during this period the hospital never contacted Wilson, Wilson, upon hearing of plans for hospital expansion, took it upon himself to contact the hospital to offer his services to them in obtaining a loan. The testimony and exhibits support the hospital's position that Wilson was never asked nor encouraged to act in its behalf and that his efforts in contacting the Ziegler Co during that period of time were not authorized by the hospital. The evidence further supports the trial court's finding that the loan obtained by the hospital from Ziegler in 1966 in the amount of $2.1 million was procured through direct dealings between the hospital and Ziegler & Co. and not as a result of efforts by Wilson.

The trial court also found that the loan obtained in 1966 was not the same as that contemplated in 1963–64, and as such finding is not clearly erroneous we will not disturb it on appeal.

Questions one and two having been answered in the negative we need not consider questions three through six.

Affirmed.

HATHAWAY, J., and ALICE TRUMAN, Judge of Superior Court, concur.

NOTE: Judge HERBERT F. KRUCKER having requested that he be relieved from consideration of this matter, Superior Court Judge ALICE TRUMAN was called in his stead and participated in the determination of this decision.