540 P.2d 161

Gerald **BARNES** and Jane Doe Barnes, husband and wife, Arthur Herzberg and Florence Herzberg, husband and wife, and Seymour J. Tash and Joy Tash, husband and wife, Appellants,

v.

Ruth **VOZACK**, Appellee.

No. 2 CA–CIV 1851.

Court of Appeals of Arizona, Division 2.

Sept. 11, 1975.

Rehearing Denied Oct. 15, 1975.

Review Granted Nov. 25, 1975.

Berry & Herrick, P. A., by Richard S. Berry, Tempe, for appellants.

Slutes, Zlaket, Sakrison & Wasley, by James M. Sakrison, Tucson, Lesher, Kimble, Rucker & Lindamood, P. C., by Gerald G. Hawley, Tucson, for appellee.

**544**

## OPINION

KRUCKER, Judge.

This was an action by appellee, Ruth Vozack, against Gerald Barnes, Arthur Herzberg, Seymour Tash, Martin Hassett, and their wives, Budget Controls, Inc. and Commercial Management Corp. for fraud. From a judgment for appellee, appellants Barnes, Tash and Herzberg appeal. We reverse.

Appellants Barnes, Herzberg and Tash formed Commercial Management Corporation some time before the events out of which this action arose. They were its sole shareholders, directors and officers.

In April of 1970, Samuel Sitzer and Jeanette Laurie, who was the secretary of appellants' attorney, Richard Berry, organized Budget Controls, Inc. Appellants paid the organizational expenses and provided Budget Controls with its operating capital. Although all the shares of Budget Controls, Inc. were originally issued to Laurie, appellant Barnes testified that appellants exercised complete control over her. Her function was merly to hold the shares and release them to Sitzer in blocks as he brought in clients. Appellants agreed with Sitzer that Sitzer would actually run Budget Controls but would share the profits with appellants.

From the beginning appellant Tash helped Sitzer run Budget Controls. It was soon discovered that Budget Controls had insufficient capital to operate successfully. Barnes, Herzberg and Tash accordingly lent money to Budget Controls through Commercial Management Corp. In addition they provided management services to Budget Controls for $3,000 per month pursuant to a contract between Budget Controls and Commercial Management Corp. Corp.

Appellants' loans to Budget Controls were not enough to see it through. Barnes, Herzberg and Tash therefore discussed with Sitzer the advisability of having Budget Controls raise further capital by issuing and selling stock. As a result of these discussions, Budget Controls petitioned the Arizona Corporation Commission on May 19, 1970 for a special order under A.R.S. § 44–1846 permitting it to sell up to $200,000 worth of securities without registration. The petition, signed by Sitzer and Laurie, averred in pertinent part:

"Petition to Exempt the Sale of Certain Stock Pursuant to A.R.S. § 44–1846

\*   \*   \*   \*   \*   \*

"10. The offering will be made only by the officers and directors of the company, or by a person familiar with the company's operations and corporate purpose. . . . The offering will be made only to selected casualty insurance agents and their associates and affiliates.

11. . . . [The] officers will be friends and/or business associates of the officers, directors and present stockholders of the issuer, or other individuals known by the issuer to be interested in the general type of business operation proposed by the offeror.

\*   \*   \*   \*   \*   \*

The persons effected [sic] by the proposed offering will be in such a close relationship to the issuer and are or will be so familiar with the details of the business of the issuer that they do not need the protection otherwise afforded by registration of the securities under the Securities Act of the State of Arizona."

On May 22, 1970, the Commission entered an exemption order authorizing Budget Controls to sell 20,000 of its shares for $10 a share under the conditions set forth in its petition.

Martin Hassett, an employee of Budget Controls since its formation, undertook to sell shares pursuant to the exemption. In June of 1970 he sought out appellee, an elderly widow who had previously dealt with appellants in a limited partnership, to see if he could effect a sale. Calling himself "Mr. Martin", Hassett falsely represented to appellee that Budget Controls owned a shopping center in Douglas, Arizona, and

an apartment complex under construction in Tucson. He also falsely stated that Budget Controls was operating in 13 states and was growing fast. He further represented that appellee would obtain a 12 percent return on her investment and could sell back her shares on 30 days' notice at any time. On June 24, 1970, in reliance on Hassett's representations, appellee entered into a subscription agreement for 700 shares of Budget Controls preferred stock. She received 700 shares at that time. In the summer of 1970, appellant Barnes conversed and corresponded with appellee concerning the stock issue. On September 18, 1970, appellee bought the remaining 1000 shares.

Appellants' involvement with the daily affairs of Budget Controls increased during the summer of 1970. By August, appellant Tash had assumed complete managerial control. In the fall of 1970, the Corporation Commission suggested to appellants that Budget Controls and Commercial Management Corp. should merge. Accordingly, on September 10, 1970, Budget Controls stated in a letter to the Commission that it was voluntarily suspending sales of stock under the May 22 authorization and that it would proceed to consummate the merger with Commercial Management Corp.

Although there was testimony that the shareholders of Budget Controls were notified of a shareholder meeting to vote on the merger, appellee did not recall ever having received such notice. She first heard of the proposed merger from Martin Hassett. Instead of informing appellee of her right to dissent, Hassett presented the merger as a *fait accompli*. Appellee was unhappy about the merger because she thought she had "gotten rid" of Barnes, Herzberg and Tash in connection with the earlier limited partnership. Hassett nonetheless succeeded in inducing appellee to sign a waiver of notice of the shareholder meeting and a proxy authorizing Tash to vote her shares in favor of the merger.

On June 30, 1972, appellee filed a complaint naming Budget Controls, Inc., Commercial Management Corp., Hassett, Barnes, Tash, Herzberg and their wives as defendants. Count One sought recovery on a theory of common law fraud. Count Two was based on alleged fraud in the procuring of the merger.

On December 18, 1973, more than three years after the sale of stock and the merger, the trial court permitted appellee to file an amended complaint. The amended complaint added a count alleging that Hassett's misrepresentations and the statements contained in Budget Controls' exemption petition violated A.R.S. §§ 44–1991 and 44–1992. The amended complaint accordingly prayed for compensatory damages in the amount of $17,000, plus interest, costs and attorney's fees pursuant to A.R.S. § 44–2001, or in the alternative, rescission under A.R.S. § 44–2002. Punitive damages in the amount of $100,000 were also prayed for.

A bench trial was conducted on February 5, 1974. The trial court took the case under advisement and on October 11, 1974, rendered a joint and several judgment against all defendants for the amounts demanded. From this judgment, Barnes, Herzberg, Tash and their wives have appealed.

Count III of plaintiff's amended complaint re-alleges the paragraphs of Count I that describe Hassett's representations to plaintiff concerning the nature of Budget Controls and its assets. It then alleges that by reason of these representations the defendants are guilty of "making untrue statements of a material fact" in violation of A.R.S. § 44–1991. In a separate paragraph, Count III further alleges that defendants made untrue statements of material fact in their exemption petition of May 19, 1970, in violation of A.R.S. § 44–1992. Count III concludes by demanding $17,000 plus interest, costs and attorney's fees pursuant to A.R.S. § 44–2001. Count IV re-alleges Count III and demands rescission as an alternative.

Before trial, appellants moved to dismiss Counts III and IV of the amended complaint on the ground that the claims set forth were barred by the three-year limitations provision of A.R.S. § 44–2004(B). The trial court denied the motion and appellants now contend this was error. We think the trial court should have dismissed Counts III and IV insofar as they seek recovery under A.R.S. § 44–1992 for false statements in the exemption petition of May 19, 1970. The motion to dismiss was properly denied, however, as to the portions of Counts III and IV that demanded recovery under A.R.S. § 44–1991 for Hassett's misrepresentations. Rule 15(c), Rules of Civil Procedure, 16 A.R.S., provides:

"Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."

The Arizona courts have long recognized that as long as the amended pleading sets forth the same conduct, transaction, or occurrence as the earlier pleading, the amendment relates back even though it alleges new theories of recovery. *Johnson v. Nychyk*, 21 Ariz.App. 186, 517 P.2d 1079 (1974); *Green Reservoir Flood Control District v. Willmoth*, 15 Ariz.App. 406, 489 P.2d 69 (1971); *Neeriemer v. Superior Court*, 13 Ariz.App. 460, 477 P.2d 746 (1970). In this case appellee's original complaint alleged that Hassett misrepresented the extent of Budget Controls' assets and business to induce appellee to buy stock and demanded relief on a theory of common law fraud. On the basis of the same misrepresentations, appellee's amended complaint demanded relief under A.R.S. § 44–1991. To that extent, then, the amendment was based on a transaction set forth in the original complaint. Although it alleged a new theory of recovery, it nonetheless related back. *Johnson v. Nychyk*, supra.

As *Baker v. Walston & Company*, 7 Ariz.App. 590, 442 P.2d 148 (1968) makes clear, however, an amendment that depends on proof of a transaction different from and independent of the transactions set forth in the original complaint will not relate back. Here the amended complaint alleged that appellants made false statements in the exemption petition filed on May 19, 1970. The original complaint makes no reference whatever to the exemption petition and cannot be construed to encompass it in any way. Under *Baker* the amendment therefore does not relate back to the date of the original complaint. Since the amended complaint was filed more than three years after the filing of the exemption petition, appellee's claim under A.R.S. § 44–1992 based on false statements contained therein is barred by A.R.S. § 44–2004(B).

Appellants next contend, in effect, that the evidence was insufficient to prove they participated in Hassett's misrepresentations to appellee in connection with the sale of Budget Controls stock. They further contend there was no evidence that they participated with Hassett in fraudulently procuring the proxy authorizing appellant Tash to vote appellee's shares in favor of the merger. We have closely examined the record and agree with both contentions. Appellee makes much of the fact that appellants provided Budget Controls with its operating capital. She also points out that Barnes and Herzberg once delivered a dividend check to her, that Barnes and Tash discussed the issuance of the stock and the merger with her, and that appellants early on acquired *de facto* control of Budget Controls. Appellee contends that these facts, together with the fact that virtually all the shares of Budget Controls were held by the secretary of appellants' attorney, established sufficient participation in the fraudulent transactions to render appellants liable. We cannot agree.

These facts show at most that as a general proposition appellants were heavily

involved in the operation of Budget Controls. Hassett, who presumably could have shed much light on the question of whether appellants participated with him in defrauding appellee, did not testify. Absent his testimony, there is no evidence that appellants directly or indirectly participated in any specific act of fraud. There is also nothing to show that appellants personally employed Hassett or that Hassett was anything but the employee of Budget Controls. Finally, there is no evidence that appellants authorized Hassett's fraudulent acts. On this record we must conclude that appellants cannot be held liable for Hassett's misrepresentations to appellee.

Appellee argues that appellants could properly be held liable for failure to give her notice of the shareholders' meeting on the merger and failure to notify her of her rights as a dissenting shareholder. She cites *Garrett v. Reid-Cashion Land & Cattle Co.*, 34 Ariz. 245, 270 P. 1044 (1928) for the proposition that majority shareholders have a fiduciary duty to inform minority shareholders of their legal rights in connection with a merger. Appellee's reliance on *Garrett* is misplaced. Plaintiffs in *Garrett* sued not for damages but to set aside a merger. The court there held that the defendant majority shareholders had a duty to advise plaintiffs of their right to dissent and that since plaintiffs were ignorant of their right to dissent, their acceptance of shares in the surviving corporation was not an effective ratification of the merger. There was no suggestion in *Garrett* that the failure to notify gave rise to a claim for damages against the defendants personally. Further, in *Garrett* the defendants' duty to notify arose because of their positions as majority shareholders. Here the appellants held none of the shares in Budget Controls.

We are aware that $10,000 worth of Budget Controls stock was sold to appellee on September 18, 1970, eight days after Budget Controls notified the Corporation Commission it would suspend the sale of its stock. Neither appellee's brief nor our own research has disclosed any authority for the proposition that a sale of stock after a voluntary suspension has adverse legal consequences for any person. We therefore do not think the September 18 sale forms a basis for sustaining the judgment against appellants.

The judgment is reversed as to appellants with directions to enter judgment in their favor.

HOWARD, C. J., and HATHAWAY, J., concurring.