550 P.2d 1070

Gerald **BARNES** and Jane Doe Barnes, husband and wife, Arthur Herzberg and Florence Herzberg, husband and wife, and Seymour J. Tash and Joy Tash, husband and wife, Appellants,

v.

Ruth **VOZACK**, Appellee.

No. 12343–PR.

Supreme Court of Arizona,
In Banc.

June 9, 1976.
Rehearing Denied July 13, 1976.

Berry & Herrick, P. A. by Richard S. Berry, Tempe, for appellants.

Slutes, Zlaket, Sakrison & Wasley by James M. Sakrison, Tucson, and Lesher, Kimble, Rucker & Lindamood, P. C. by Gerald G. Hawley, Tucson, for appellee.

CAMERON, Chief Justice.

We granted a petition to review a decision and opinion of the Court of Appeals, Division Two, *Barnes v. Vozack*, 24 Ariz. App. 542, 540 P.2d 161 (1975), which reversed the decision of the trial court and entered a judgment in favor of defendants Barnes, Tash, Herzberg, and their wives.

We must answer the following questions on appeal:

1. Did the amended complaint properly relate back so as to avoid the running of the statute of limitations?

2. Was there a sufficient showing of fraud as to the three defendants?

3. Is the marital community of the defendants Seymour and Joy Tash liable for damages?

Viewing the evidence in a light most favorable to the prevailing party, *Wilson v. Tucson General Hospital*, 18 Ariz.App. 31, 499 P.2d 762 (1972), the facts necessary for a determination of this matter are as follows. In early 1970, plaintiff, Ruth Vozack, an elderly widow, invested $17,000 in a limited partnership, CMC Investments. Commercial Management Corporation of which Gerald Barnes, Arthur Herzberg and Seymour Tash were the sole stockholders and officers, was the general partner. After discussing the matter with her attorney and after further negotiations, a mutual release was signed by Vozack and defendants Barnes, Herzberg and Tash. Vozack had returned to her the amount of her investment which included real property as well as cash. The release was dated 6 May 1970.

Defendants Barnes, Herzberg, and Tash had formed Commercial Management Corporation and were its sole shareholders, directors and officers. In April of 1970, Samuel Sitzer and Jeannette Laurie organized Budget Control, Inc. Jeannette Laurie was a secretary for defendants' attorney, and other than holding the stock and acting as secretary, played no part in the operation of the company. Sam Sitzer ran the company at first. Defendants paid the organizational expenses and provided Budget Control with its operating capital. Budget Control was to engage in the business of financing insurance premiums. It was soon discovered that Budget Control had insufficient capital to operate successfully. Therefore, Barnes, Herzberg, and Tash lent money to Budget Control through Commercial Management Corporation. In addition, they provided management services to Budget Control for $3,000 per month pursuant to a contract between Budget Control and Commercial Management Corporation.

After discussions between Sitzer and defendants, Budget Control decided to raise further capital by a stock issue. Budget Control petitioned the Arizona Corporation Commission on 19 May 1970 for a special order under A.R.S. § 44–1846 permitting it to sell up to $200,000 worth of securities without registration. The exemption petition, signed by Sitzer and Laurie, averred:

"Petition to Exempt the Sale of Certain Stock Pursuant to A.R.S. § 44–1846

\* \* \* \* \* \*

"10. The offering will be made only by the officers and directors of the company, or by a person familiar with the

company's operations and corporate purpose. * * * The offering will be made only to selected casualty insurance agents and their associates and affiliates.

"11. The offering will be made to not more than twenty-five persons. * * * [The] offerees will be friends and/or business associates of the officers, directors and present stockholders of the issuer, or other individuals known by the issuer to be interested in the general type of business operation proposed by the offeror. * * *

"The persons affected by the proposed offering will be in such a close relationship to the issuer and are or will be so familiar with the details of the business of the issuer that they do not need the protection otherwise afforded by registration of the securities under the Securities Act of the State of Arizona."

On 22 May 1970, the Corporation Commission entered an exemption order authorizing Budget Control to sell 20,000 of its shares for $10 a share under the conditions set forth in its petition.

Martin Hassett, an employee of Budget Control, undertook to sell shares pursuant to the exemption. Calling himself "Mr. Martin," Hassett approached and falsely represented to Mrs. Vozack that Budget Control owned a shopping center in Douglas, Arizona, and an apartment complex under construction in Tucson. He also falsely stated that Budget Control was operating in 13 states and was growing fast, and he further represented that plaintiff would obtain a 12% return on her investment and could sell back her shares on 30 days' notice at any time. On 24 June 1970, in reliance on Hassett's representations, plaintiff entered into a subscription agreement for 700 shares of Budget Control preferred stock. Mrs. Vozack purchased an additional 1000 shares of stock on 18 September 1970 even though Budget Control had notified the Corporation Commission on 10 September 1970 that it was voluntarily suspending sale of the stock.

On 30 June 1972, Vozack filed a complaint seeking recovery on a theory of common fraud against Budget Control, Inc., Commercial Management Corporation, Hassett, Barnes, Tash, Herzberg, and their wives as defendants. Plaintiff amended her complaint on 18 December 1973, more than three years after the sale of stock. The amended complaint added a count of statutory fraud alleging misrepresentations in the sale pursuant to A.R.S. § 44-1991 and also fraud in that defendants made untrue statements of material fact in their exemption petition of 19 May 1970 in violation of A.R.S. § 44-1992.

Trial was before the court without a jury and judgment was in favor of the plaintiff. From this judgment Barnes, Herzberg, Tash, and their wives appealed. The Court of Appeals in *Vozack v. Barnes,* supra, ruled that the trial court should have dismissed those counts in plaintiff's amended complaint which sought recovery under A.R.S. § 44-1992 for false statements in the exemption petition of 19 May 1970 because they were barred by the three year statute of limitations, and further that the evidence was insufficient to show that the three defendants participated in the fraud. We granted review.

## DID THE AMENDED COMPLAINT RELATE BACK?

Rule 15(c) of the Rules of Civil Procedure, 16 A.R.S., provides:

"Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."

Relying on *Baker v. Watson & Company,* 7 Ariz.App. 590, 442 P.2d 148 (1968), the Court of Appeals reasoned:

"* * * an amendment that depends on proof of a transaction different from and independent of the transactions set forth in the original complaint will not relate back. Here the amended complaint alleged that appellants made false state-

ments in the exemption petition filed on May 19, 1970. The original complaint makes no reference whatever to the exemption petition and cannot be construed to encompass it in any way. Under *Baker* the amendment therefore does not relate back to the date of the original complaint. * * *" 24 Ariz.App. at 546, 540 P.2d at 165.

■ We have no difficulty with the amended complaint relating back as to the allegation of fraud in the sale of the stock pursuant to A.R.S. § 44–1991. The first complaint alleged common law fraud in the sale of the stock. The amended complaint alleged statutory fraud in the same sale of the same stock. It was based upon the conduct, transaction and occurrence set forth in the original pleading. The amended complaint then related back pursuant to Rule 15(c), Rules of Civil Procedure, 16 A.R.S.

■ We agree with the Court of Appeals, however, that the portion of the amended complaint which alleges a violation of A.R.S. § 44–1992, a false statement in the exemption petition, does not relate back. A.R.S. § 44–1992 reads as follows:

"It is a fraudulent practice and unlawful:

"1. For a person to subscribe to or make or cause to be made an untrue statement of a material fact in an application, registration statement, prospectus, financial statement or document required to be filed under any provision of this chapter or any rule, regulation or order of the commission thereunder.

"2. To omit or cause to be omitted from any such application, registration statement, prospectus, financial statement, or other statement or document, a material fact or statement necessary in order to make the statements made therein, in the light of the circumstances under which they were made, not misleading."

This amended complaint stated a new cause of action, making a false statement in an exemption application. Although a

fraudulent practice, it is not a part of the same "conduct, transaction or occurrence" which was the basis of the original complaint for fraud in the sale of the stock. This portion of the complaint did not relate back and the trial court should have stricken that portion of the amended complaint as being covered by the statute of limitations, A.R.S. § 12–543.

## WAS THERE A SUFFICIENT SHOWING OF FRAUD AS TO THE THREE DFENDANTS?

Rule 52(a) of the Rules of Civil Procedure, 16 A.R.S. reads in part as follows:

"* * * Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses. * * *"

And our Court of Appeals has stated:

"If the findings of the trial court are supported by reasonable evidence, or based upon reasonable inferences drawn from conflicting evidence, those findings will not be disturbed on appeal. * * *" *United Sec. Corp. v. Anderson Aviation Sales Co., Inc.,* 23 Ariz.App. 273, 275, 532 P.2d 545, 547 (1975).

A.R.S. § 44–1991 reads in part as follows:

"It is a fraudulent practice and unlawful for a person, in connection with a transaction or transactions within or from this state involving an offer to sell or buy securities, * * * directly or indirectly to do any of the following:

'1. Employ any device, scheme or artifice to defraud.

"2. Make any untrue statement of material fact, or omit to state any material fact necessary to make the statements made, in the light of the circumstances under which they were made, not misleading.

"3. Engage in any transaction, practice or course of business which operates or would operate as a fraud or deceit."

The three defendants had previously done business with Mrs. Vozack. They had just

returned some $17,000 back to her from the limited partnership transaction. Martin Hassett obtained this same amount for the sale of stock to Vozack, a person not included in the exemption certificate. The testimony was certainly sufficient from which the court could find that Hassett directly violated A.R.S. § 44–1991 and was guilty of statutory fraud. The question before us is whether there was sufficient evidence from which the trial court could find that the defendants indirectly violated the statute.

### The Testimony of the Three Defendants

Although Barnes testified that he had no discussion with Mrs. Vozack at any time except when he left a dividend check with her from Budget Control, he did testify at his deposition concerning the operation of Budget Control:

"* * * When the application for the exemption was made, you are still a straw man, and Laurie, she was secretary, Budget Control.

"Answer: Yes.

"Question: At that time, she really held all the common stock?

* * * * * *

"Answer: Yes.

* * * * * *

"Question: How much management were you directing over her?

"Answer: How much management was I directing over her?

"Question: Yes.

"Answer: Well, I suppose a hundred percent."

Seymour Tash testified at trial as follows:

"Well, Budget Control started off with great expectations. And, as it turned out, Sitzer could not quite deliver the accounts to be financed, and the amount and volume that he had anticipated; and, consequently, little by little, he brought the Budget Controls operation to us—I mean Barnes and Herzberg and myself—and finally, we entered into an agreement with Budget Controls to handle the company for them, and we were in the process of advancing money, because the company itself could not go out and borrow money from the banks because they didn't have enough loans outstanding to support a loan from the bank, you know, at—where you borrow at a lower interest rate, rather than a higher one; and so, the assets of the company were diminishing, and the company was not doing the business, and Sitzer himself, it appears, became disenchanted with the thing, and started paying less attention to it; and the—so the business began to just deteriorate. Right at about that time we started entering—we started getting into the discussion regarding a merger of the companies, because we were not only running the company, but we were putting up money to fund it."

And Tash also testified:

"Q All right. Did Budget Controls ever have any need—excuse me—did Commercial Management have any other relationship with Budget Controls, apart from just advancing money?

"A Well, at—after a very short period, Budget Controls officed—with Commercial Management, to act as their place of records, and—answering service."

And Defendant Arthur Herzberg testified:

"Q * * * What was your understanding of the connection, or correlation, between Budget Control and Commercial Management Corporation?

"A At what time?

"Q Let's say in—in the spring of 1970.

"A Was that before the merger?

"Q Yes. In other words, let's say at the time the exemption was issued for the issuance of securities to a limited portion of the public.

"A My understanding at that particular time was that—we had a manage-

ment contract to—when I say, 'we.' I mean Commercial Management—to provide our services to Budget Control."

The three defendants all admitted by this testimony that they were, in fact running Budget Control. It appears to be more than a coincidence that after Mrs. Vozack had her $17,000 in land and cash returned to her by reason of the mutual release of 6 May 1970, the salesman for Budget Control, Martin Hassett, would return to Mrs. Vozack and in two separate transactions sell $17,000 worth of stock for cash and real property. The second sale occurred on 18 September 1970, eight days after the Corporation Commission had been notified that Budget Control, Inc., had voluntarily suspended sales of stock previously authorized. We believe that the evidence was sufficient from which the trial court could find that the three defendants indirectly fraudulently sold stock to Vozack contrary to A.R.S. § 44–1991.

## IS THE TASH COMMUNITY LIABLE?

The judgment was obtained against Seymour J. Tash and Joy Tash, husband and wife. Seymour Tash was married to Joy in October of 1970 after the sale of the stock to Mrs. Vozack but before the merger of the two companies. Suit was instituted after the marriage. Defendant Tash contends that the marital community is not liable for the separate debt of a member of the community incurred prior to marriage. We believe the following statute is controlling:

"A. The separate property of a spouse shall not be liable for the separate debts or obligations of the other spouse, absent agreement of the property owner to the contrary.

"B. The community property is liable for the premarital separate debts or other liabilities of a spouse, incurred after September 1, 1973 but only to the extent of the value of that spouse's contribution to the community property which would

have been such spouse's separate property if single." A.R.S. § 25–215.

Section B of the statute changed the long-standing law in Arizona that the marital community was not liable for the separate debts of the parties prior to the marriage. We believe that before the Tash community can be bound by the provision of Section B of this statute, it must first be shown that the debt:

1. was incurred after 1 September 1973, and

2. was a premarital debt, that is, incurred prior to marriage.

In the instant case, if we should find the debt was incurred at the date of the judgment, October 1973, which was after 1 September 1973, it would not be a premarital debt as the defendant Tash was married in October 1970. If the debt was incurred at the time of the sale, September 1970, it was incurred prior to 1 September 1973 and the statute would not be applicable. We find that neither Mrs. Tash nor the marital community are liable for the judgment.

## DISPOSITION

Our statutes state:

"A. The supreme court may affirm, reverse or modify a judgment or order appealed from, and may render such judgment or order as the court below should have rendered, or may remand the action to the court below with directions to render such judgment or order, or may direct that a new trial or other proceedings be had, as justice may require, accompanying the mandate with a copy of its opinion." A.R.S. § 12–2103.

Even though the trial court erred in allowing the complaint to be amended to include the allegation of fraud in the application pursuant to A.R.S. § 44–1992, the judgment does not have to be reversed. The judgment is a general money judgment and is, we believe, amply supported by the remaining pleadings and the evidence. We therefore affirm the judgment of fraud.

Upon issuance of the mandate in this case, the judgment is ordered amended to strike the defendant "Joy Tash, husband and wife" as parties defendant. The judgment is affirmed as to the defendant Seymour Tash and the other defendants. The opinion of the Court of Appeals, 24 Ariz.App. 542, 540 P.2d 161 (1975) is vacated.

Judgment of the trial court is affirmed as modified.

STRUCKMEYER, V. C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.