IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

————————————

**STATE OF ARIZONA, ET AL.,**
*Plaintiffs/Appellants,*

*v.*

**ARIZONA BOARD OF REGENTS, ET AL.,**
*Defendants/Appellees.*

————————————

No. CV-21-0134-PR
Filed April 5, 2022

————————————

Appeal from the Superior Court in Maricopa County
The Honorable Christopher T. Whitten, Judge
No. TX2019-000011
**AFFIRMED IN PART & REMANDED**

————————————

Opinion of the Court of Appeals, Division One
251 Ariz. 182 (App. 2021)
**VACATED**

————————————

COUNSEL:

Mark Brnovich, Arizona Attorney General, Joseph A. Kanefield, Chief Deputy and Chief of Staff, Brunn ("Beau") W. Roysden, III, Solicitor General, Michael S. Catlett, Deputy Solicitor General, Phoenix; and Brian M. Bergin (argued), Brent Demmitt, Bergin Frakes Smalley & Oberholtzer PLLC, Phoenix, Attorneys for State of Arizona and Mark Brnovich

Paul F. Eckstein, Joel W. Nomkin (argued), Shane R. Swindle, Thomas D. Ryerson, Austin C. Yost, Perkins Coie LLP, Phoenix, Attorneys for Arizona Board of Regents and John P. Creer

Brett W. Johnson, Colin P. Ahler, Tracy A. Olson, Snell & Wilmer LLP, Phoenix, Attorneys for Arizona Board of Regents

David J. Cantelme, D. Aaron Brown, Cantelme & Brown P.L.C., Tempe, Attorneys for Amicus Curiae Vince Leach

———————————

JUSTICE LOPEZ authored the opinion of the Court, in which CHIEF JUSTICE BRUTINEL, VICE CHIEF JUSTICE TIMMER, and JUSTICES BOLICK, BEENE, MONTGOMERY, and JUDGE STARING joined.[*]

———————————

JUSTICE LOPEZ, opinion of the Court:

**¶1**　　　　We consider the scope of three statutes the Attorney General invoked to challenge an agreement the Arizona Board of Regents ("ABOR") entered into with a private company for the latter to construct and operate a hotel and conference center on ABOR-owned property. We conclude that (1) to initiate an action under A.R.S. § 42-1004(E), there must be an applicable tax law to enforce; (2) the Attorney General may bring a quo warranto action under A.R.S. § 12-2041 to challenge the unlawful usurpation or exercise of a public franchise; and (3) a public-monies claim brought by the Attorney General is subject to the five-year statute of limitations described in A.R.S. § 35-212(E). Accordingly, we affirm the dismissal of *Counts I* and *II*, and remand *Counts III* and *IV* to the tax court for further proceedings.

## BACKGROUND

**¶2**　　　　The challenged agreement between ABOR and Omni Tempe, LLC ("Omni") became effective on February 28, 2018. The agreement outlined various terms of what has collectively been referred to as the "Omni Deal." The Omni Deal includes construction of a new hotel, conference center, and parking lot on land owned by ABOR at Arizona State University's ("ASU") Tempe campus. The agreement gave Omni an

———————————

[*] Justice Kathryn H. King has recused herself from this case. Pursuant to article 6, section 3 of the Arizona Constitution, the Honorable Christopher Staring, Judge of the Arizona Court of Appeals, Division Two, was designated to sit in this matter.

option[1] to lease the hotel and conference center property from ABOR for sixty years and to purchase the property from ABOR at the end of the lease term for a nominal fee. Because property owned by ABOR, as a state entity, is tax-exempt, Omni would not pay the property taxes a private hotel and conference center would otherwise pay during the lease term; instead, Omni would pay ABOR prepaid rent of $5.9 million and annual rent during the lease term totaling more than $118 million. ABOR also agreed to pay Omni up to $19.5 million towards constructing the conference center, which Omni would otherwise fund, in exchange for seven days' use of the center annually.

¶3 The Attorney General's Office ultimately discovered the Omni Deal. Although the parties dispute when the Attorney General's knowledge of the Omni Deal became legally relevant, it is undisputed that an email thread linking to online articles referring to the Omni Deal as a bad "tax break" was generated by and between Attorney General's Office attorneys on January 11, 2018. The articles suggested that Omni would be shielded from up to $21 million in taxes that it would otherwise have to pay the City of Tempe because Omni would be making "payments in lieu of taxes" to ASU. In the email thread, one assistant attorney general characterized the "in lieu of" payments as "pretty suspicious."

¶4 The Attorney General filed a three-count complaint against ABOR on January 10, 2019, seeking to void the transaction or subject the property to taxes. *Count I* alleges that the lease between Omni and ABOR is subject to taxation because the constitutional exemption from taxation that ABOR enjoys cannot apply to a commercial enterprise like the Omni Deal. *Counts II* and *III* seek quo warranto relief alleging that ABOR was unlawfully exercising its official franchise by entering into this lease. On April 3, 2019, the Attorney General filed an amended complaint adding *Count IV*, which seeks to enjoin the illegal payment of public monies under the Attorney General's authority as authorized by § 35-212. Specifically, *Count IV* alleges that the up to $19.5 million ABOR agreed to contribute towards the construction of the conference center violates article 9, section 7 of the Arizona Constitution, commonly referred to as the "Gift Clause."

---

[1] In its briefing to this Court, ABOR confirmed that Omni has exercised this option.

**¶5**        ABOR moved to dismiss *Counts I–III*, and the tax court granted those motions after finding that the Attorney General lacked the authority to bring each claim.  ABOR also moved for summary judgment on *Count IV* arguing that it was barred by a one-year statute of limitations.  The tax court agreed and ruled that because the claim accrued on January 11, 2018—the date of the email exchange at the Attorney General's Office—and *Count IV* did not "relate back" to the original complaint, it was barred for untimeliness.  The tax court's final judgment included an award to ABOR of $979,758 in attorney fees and $2,356.62 in taxable costs.  The court of appeals affirmed the tax court's judgment, *State v. Ariz. Bd. of Regents*, 251 Ariz. 182, 190 ¶ 36 (App. 2021), and the Attorney General timely petitioned this Court.

**¶6**        We granted review to determine whether the Attorney General is authorized to bring *Counts I–III*, and whether *Count IV* was timely filed.  These are issues of statewide importance over which we have jurisdiction pursuant to article 6, section 5 of the Arizona Constitution.

## DISCUSSION

**¶7**        Our constitution limits the Attorney General's authority to bring claims as delineated by statute.  *State ex rel. Brnovich v. Ariz. Bd. of Regents*, 250 Ariz. 127, 130 ¶ 8 (2020); *see also* Ariz. Const. art. 5, § 9 ("The powers and duties of . . . [the] attorney-general . . . shall be as prescribed by law.").

### I.

**¶8**        We first consider whether the Attorney General had the authority to bring *Counts I–III* in his initial complaint against ABOR.  We review an order granting a motion to dismiss for failure to state a claim under Arizona Rule of Civil Procedure 12(b)(6) de novo.  *Cox v. Ponce ex rel. Cty. of Maricopa*, 251 Ariz. 302, 304 ¶ 7 (2021).

### A.

**¶9**        *Count I* seeks declaratory and injunctive relief against ABOR.  The Attorney General asserts that the ABOR-owned property on which the Omni hotel and conference center is to be built is subject to taxation; thus, the property must either be taxed or the agreement voided.  The Attorney

General argues that he has the authority to bring this claim under § 42-1004(E), which mandates that the Attorney General "shall prosecute in the name of this state all actions necessary to enforce this title [42] and title 43." The referenced titles include Arizona's tax laws. The tax court dismissed *Count I* for lack of authority because there was no title—i.e., tax—for the Attorney General to "enforce." The court of appeals affirmed, and we agree.

¶10 The Attorney General does not dispute that state property is exempt from taxation. *See* Ariz. Const. art. 9, § 2(1) ("There shall be exempt from taxation all federal, *state*, county and municipal property." (emphasis added)). But contrary to the Attorney General's assertion that ABOR is not exempt from taxation because it is acting as a "political subdivision" and not the "state," this Court has already resolved that ABOR is considered the "state," *Bd. of Regents of Univs. & State Coll. v. City of Tempe*, 88 Ariz. 299, 305 (1960) ("We think it perfectly clear . . . that the Board of Regents may, for all purposes, be classified as a public agency of the State rather than a private corporation."), and its actions do not transmute its state status. Because ABOR is the "state," our constitution provides that its property is not subject to taxation. *See* Ariz. Const. art. 9, § 2(1); *see also City of Tempe v. Del E. Webb Corp.*, 13 Ariz. App. 597, 598 (1971) ("[T]he Board of Regents is a state agency and therefore exempt from taxation."). Thus, there is no enforcement action the Attorney General can take under his § 42-1004(E) authority because there is no tax to enforce.

¶11 Notwithstanding the Attorney General's inability to identify an applicable tax law under title 42 or 43 that he is authorized to enforce here, he argues that because the purpose of the Omni Deal is to evade taxes, the property leased *is* subject to taxation. He relies on the Arizona Constitution, which provides that "[n]o property shall be exempt which has been conveyed to evade taxation." Ariz. Const. art. 9, § 2(12). But again, for a conveyance to be made to *evade* taxation, there must be a tax to evade in the first place, and here there is none. Thus, we affirm the dismissal of *Count I*.

## B.

¶12 The Attorney General filed *Counts II–III* pursuant to his quo warranto authority. Both counts allege that ABOR unlawfully usurped or exercised state franchises by exceeding its statutory authority to

"[p]urchase, receive, hold, make and take leases and long-term leases of and sell real and personal property for the benefit of this state and for the use of the institutions under its jurisdiction." A.R.S. § 15-1625(B)(4). The Attorney General alleges separate bases for *Counts II* and *III*, which we address in turn, concerning how ABOR exceeded its lawful authority in entering the Omni Deal.

¶13 Under the quo warranto statute, § 12-2041(A), the Attorney General may bring an action "against any person who usurps, intrudes into or unlawfully holds or exercises any public office or any franchise within this state." The court of appeals held, and ABOR once again argues, that our quo warranto statute only allows "the [Attorney General] to challenge a person's right to hold office but not how that person *exercises* that office's powers." *Ariz. Bd. of Regents*, 251 Ariz. at 189 ¶ 32 (emphasis added). This interpretation is contrary to the text of the statute, which explicitly empowers the Attorney General to bring a claim against "any person who . . . unlawfully holds or *exercises*" a public office or franchise. § 12-2041(A) (emphasis added). We decline to interpret § 12-2041(A) in a manner that would render the word "exercises" superfluous. *See Nicaise v. Sundaram*, 245 Ariz. 566, 568 ¶ 11 (2019) ("A cardinal principle of statutory interpretation is to give meaning, if possible, to every word and provision so that no word or provision is rendered superfluous.").

¶14 Our interpretation finds contextual support in other quo warranto sections. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167 (2012) ("Context is a primary determinant of meaning."). For instance, A.R.S. § 12-2045 criminalizes "usurpation" as a petty offense and defines that offense as "usurping or intruding into or unlawfully holding an office, franchise or privilege." Notably, although § 12-2045 otherwise mirrors the language of the quo warranto statute, it does not mention the unlawful "exercise" of an office, franchise, or privilege; presumably, this is because § 12-2041(A)'s reference to "exercise" contemplates the unlawful exercise of an office or franchise by an otherwise legitimate office holder. Similarly, A.R.S. § 12-2044, which delineates the pleading requirements and remedial damages available when the quo warranto "action involves the right to an office," necessarily implies that actions under § 12-2041(A) must also lie for reasons other than challenges to a person's right to the office.

¶15    Moreover, we have recognized the Attorney General's authority to bring a quo warranto challenge for "exercising" an unlawful franchise. *See, e.g.*, *Donaghey v. Attorney General*, 120 Ariz. 93, 94 n.1 (1978) (discussing the "long established principle" that the Attorney General may be compelled to initiate a quo warranto action if "a franchise is being unlawfully exercised" or usurped); *State ex rel. Pickrell v. Town of Scottsdale*, 99 Ariz. 103, 104 (1965) (using quo warranto challenge to set aside Town's annexation of an area that was outside of the Town's statutorily defined jurisdiction to do so).

¶16    Although the Attorney General may bring a quo warranto action challenging a person's unlawful holding *or* exercise of a public office or franchise, such authority is not unlimited.   Only ultra vires acts performed by a public official, office, or franchise—i.e., acts outside the confines of the finite authority granted to the entity by our legislature—are subject to quo warranto challenge.  *Cf., e.g.*, *Pawn 1st, LLC v. City of Phoenix*, 242 Ariz. 547, 551–52 ¶ 11 (2017) (stating that variance grants in excess of the board of adjustment's statutory authority are "ultra vires and invalid as a matter of law").   Whether the public office or franchise made wise decisions within the otherwise lawful exercise of its authority cannot be challenged in a quo warranto action.

¶17    In *Brnovich*, we declined to adopt a sweeping interpretation of another statutory source of the Attorney General's authority, A.R.S. § 41-193(A)(2), because if we had embraced a broad interpretation, "the Attorney General would generally be free to initiate legal challenges against other state officers and agencies any time he concludes they are violating the law."  250 Ariz. at 130 ¶ 10.  Instead, we recognized that over the last sixty years, the legislature has enacted more than one hundred statutes that authorize the Attorney General to take specific and defined legal actions. *Id.* at 132–33 ¶¶ 20–21.  It would be illogical for the legislature to provide these grants of specific authority if one statute, such as § 12-2041, authorized the Attorney General to challenge *any* exercise of authority by a state actor.

¶18    We decline to adopt a broader reading of § 12-2041(A) than is supported by its text: the verb "exercises" is qualified by the word "unlawfully."   Thus, the Attorney General may challenge only *unlawful exercises* of a public office or franchise; in other words, to initiate such a quo warranto action, the Attorney General must identify a law that has been violated and allege a relevant, ultra vires act.

7

**C.**

**¶19** Although we conclude that the Attorney General was authorized to bring a quo warranto action challenging ABOR's unlawful exercise of its authority under § 15-1625(B)(4) to "make and take leases and long-term leases of . . . real . . . property for the benefit of this state and for the use of the institutions under its jurisdiction," our analysis does not end there.

**¶20** *Count II* seeks quo warranto relief to prevent a "conveyance to evade taxation," which is the same conduct alleged to support *Count I*. As noted, *supra* ¶¶ 9–11, no conveyance is made to evade taxation as part of the Omni Deal because there is no applicable tax to evade. Thus, *Count II* fails as a matter of law.

**¶21** *Count III*, however, properly seeks quo warranto relief. The Attorney General alleges that the lease portion of the Omni Deal is not for the "benefit of this state and for the use of the institutions under its jurisdiction," as required by § 15-1625(B)(4), but rather for the benefit and use of Omni, and that the lease violates the non-delegation doctrine. We do not reach the merits of the Attorney General's *Count III* claim, but merely conclude that this count survives a Rule 12(b)(6) motion because he has the authority to bring a quo warranto action alleging ABOR unlawfully exercised its franchise. We remand *Count III* for further proceedings.

**II.**

**¶22** We next consider the timeliness of *Count IV*, which the Attorney General filed in an amended complaint on April 3, 2019. Neither party disputes that the Attorney General had the authority to bring this claim. Under § 35-212(A)(1), the Attorney General may "bring an action in the name of this state to . . . [e]njoin the illegal payment of public monies." The question here is whether this "public-monies claim" is governed by the five-year limitations period in § 35-212(E) or the one-year limitations period under A.R.S. § 12-821. Our review of the interpretation of a statute is de novo. *Stambaugh v. Killian*, 242 Ariz. 508, 509 ¶ 7 (2017).

**A.**

¶23        Section 35-212(E) provides that:

> An action brought pursuant to this article is subject to title 12, chapter 7, article 2.  If the action is brought by the attorney general, the action must be brought within five years after the date an illegal payment was ordered and § 12-821.01 does not apply to the action.

Section 12-821, which is in title 12, chapter 7, article 2, provides that "[a]ll actions against any public entity . . . shall be brought within one year after the cause of action accrues and not afterward."  Because the first sentence of § 35-212(E) renders § 12-821 and its referenced neighboring sections applicable to public-monies claims, ABOR argues that the court of appeals correctly held that a one-year statute of limitations applies and that the second sentence of § 35-212(E) adds a separate five-year statute of repose. *Ariz. Bd. of Regents*, 251 Ariz. at 186–87 ¶¶ 13–14.  We conclude, however, that the second sentence of § 35-212(E) creates an exception for public-monies claims brought by the Attorney General that (1) supplants the one-year limitations period in § 12-821 with a five-year limitations period, and (2) exempts such claims from the entirety of § 12-821.01.

¶24        Statutory provisions should be read in context to determine meaning, with an aim at effectuating the legislature's intent. *Stambaugh*, 242 Ariz. at 509 ¶ 7.  "[W]e may also consider statutes that are *in pari materia*—of the same subject or general purpose—for guidance and to give effect to all of the provisions involved." *Id.*  Section 35-212 authorizes the Attorney General to "[e]njoin the illegal payment of public monies," as well as to "recover illegally paid public monies."  § 35-212(A)(1), (B). Section 35-212 resides in article 6, titled "Recovery of State Monies Illegally Paid," as does § 35-213, which allows taxpayers to request that the Attorney General initiate a public-monies claim and to institute their own claims if the Attorney General fails to do so within sixty days of a request.

¶25        The legislature's intent in enacting § 35-212 and authorizing the Attorney General or a taxpayer to initiate public-monies claims is manifest: to prevent or recover the illegal payment of public monies.  Given the legislature's concern with protecting state funds and preventing past and future illegal payments, it would be counterintuitive to create two

limitations periods, applicable *only* to claims brought by the Attorney General — the primary enforcer of this authority.

**¶26** The court of appeals concluded that the five-year limitations period in § 35-212(E) was a statute of repose and that public-monies claims brought by the Attorney General were subject to both it and the one-year statute of limitations at § 12-821. *Ariz. Bd. of Regents*, 251 Ariz. at 186–87 ¶ 13. The court described the differences between a statute of limitations and statute of repose, noting that statutes of repose are "intended to establish a limit beyond which no suit may be pursued and set[] a period of time within which claims must be brought regardless of when the cause of action may accrue." *Id.* (quoting *Albano v. Shea Homes Ltd. P'ship*, 227 Ariz. 121, 127 ¶ 23 (2011)). Statutes of limitations, on the other hand, typically begin to accrue "after an injury occurs and is (or reasonably should have been) discovered." *Albano*, 227 Ariz. at 127 ¶ 23. For instance, a cause of action accrues for claims against public entities under § 12-821 "when the damaged party realizes he or she has been damaged and knows or reasonably should know the cause, source, act, event, instrumentality or condition that caused or contributed to the damage." § 12-821.01(B); *see also Dube v. Likins*, 216 Ariz. 406, 421 ¶ 2 (App. 2007) (explaining that § 12.821.01(B) sets the accrual standard for claims governed by § 12-821).

**¶27** It is true that tying § 35-212(E) to "the date of an illegal payment" as opposed to when an injury occurred or was discovered is characteristic of a statute of repose. *See CTS Corp. v. Waldburger*, 573 U.S. 1, 8 (2014) ("A statute of repose . . . is measured not from the date on which the claim accrues but instead from the date of the last culpable act or omission of the defendant."); *Kenyon v. Hammer*, 142 Ariz. 69, 73 (1984) (reasoning that if the statute in question were tied to the date of a negligent act it would be a statute of repose). But § 35-212(E) does not bear all the hallmarks of a statute of repose. "[A] statute of repose defines a substantive right" because it sets an outer time limit after which *no* claim can be brought against a potential defendant. *Albano*, 227 Ariz. at 127 ¶¶ 23–24. Unlike a statute of repose, § 35-212(E) does not protect potential defendants by imposing an outer time limit on *all* public-monies claims; because this limit applies only to the Attorney General, a taxpayer could bring a claim under § 35-213 *after* five years from the date of the illegal payment, provided the payment was not otherwise barred by the one-year limitations period as defined by the § 12-821.01(B) accrual standard.

**¶28** In considering two plausible interpretations of a statute, we will not credit one that leads to absurd results. *See State ex rel. Montgomery v. Harris*, 237 Ariz. 98, 101 ¶ 13 (2014). We are unpersuaded that the legislature intended to set an additional time constraint that applies *only* to claims brought by the Attorney General. Instead, it is more likely that the legislature aimed to provide sufficient time for the Attorney General to investigate and recover illegally paid public funds and to shield the Attorney General's enforcement authority from collateral litigation about the accrual date. We also agree with the Attorney General that it would be illogical for the legislature, in exempting such public-monies claims from § 12-821.01's requirements, to have applied § 12-821's one-year limitations period and simultaneously eliminated its accrual standard at § 12-821.01(B).

**¶29** Our conclusion that § 35-212(E) creates a five-year statute of limitations for claims initiated by the Attorney General is consistent with fundamental principles of statutory construction. "[W]hen there is conflict between two statutes, the more recent, specific statute governs over the older, more general statute." *In re Est. of Winn*, 214 Ariz. 149, 152 ¶ 16 (2007) (internal quotation marks omitted) (quoting *In re Guardianship/Conservatorship of Denton*, 190 Ariz. 152, 157 (1997)). Further, "if there is doubt as to which of two limitations periods should apply, courts generally apply the longer." *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 182 Ariz. 586, 590 (1995). Here, § 35-212(E) was added in 2018, twenty-five years after § 12-821 was enacted, it is specific to public-monies claims brought by the Attorney General, and it is the longer of the two limitations periods.

**¶30** Thus, we conclude that *Count IV* was subject to a five-year statute of limitations from "the date of an illegal payment of public monies" and remand for further proceedings.

**B.**

**¶31** Although we reverse the trial court's grant of summary judgment as to *Count IV*, we pause to clarify our interpretation of Arizona Rule of Civil Procedure 15(c) and how it applies to this case. The Attorney General argues that his amended complaint adding *Count IV* was timely even under the one-year statute of limitations if the claim accrued on January 11, 2018 (as the tax court and the court of appeals ruled) because

the amended complaint "relates back" to the original complaint filed on January 10, 2019.

**¶32** Rule 15(c) provides that: "An amendment relates back to the date of the original pleading if the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set forth, or attempted to be set forth, in the original pleading." Here, the court of appeals concluded that the amended complaint did not relate back to the original complaint because the operative facts supporting *Count IV* differed from those supporting *Counts I–III*. *Ariz. Bd. of Regents*, 251 Ariz. at 189 ¶¶ 26–27. This conclusion is flawed, however, because it interprets the rule in a manner contrary to its text: a claim relates back if it arises out of the "same transaction" as the original complaint. In this case, *Count IV* arises out of the Omni Deal which, although complex, is the same discrete transaction set forth in the original complaint as the basis for *Counts I–III*.

**¶33** We acknowledge that some federal courts have fashioned a fact-based test to interpret the federal counterpart to our Rule 15(c) and consider whether the new claim arises from the same core of operative facts as the original. *See, e.g.*, *Echlin v. PeaceHealth*, 887 F.3d 967, 978 (9th Cir. 2018) (reasoning that "an amendment will not relate back where the amended complaint 'had to include additional facts to support the [new] claim'" even if it arises from the same general transaction (quoting *Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir. 2008))). Although we recognize the persuasive value of federal courts' interpretation of a federal procedural rule, it is "not binding in the construction of our rule." *Flynn v. Campbell*, 243 Ariz. 76, 80 ¶ 9 (2017) (quoting *Orme Sch. v. Reeves*, 166 Ariz. 301, 304 (1990)).

**¶34** Here, we depart from the federal interpretation and clarify that our inquiry is transaction-based where the new claim is alleged to arise from the "same transaction." This approach is more closely moored to the rule's text and is consistent with our jurisprudence interpreting it. "It is only when the amendment seeks relief with respect to a transaction or event which was not the 'basis of the original complaint' that the doctrine of relation back is considered inapplicable." *Marshall v. Superior Court*, 131 Ariz. 379, 383 (1982); *see also Barnes v. Vozack*, 113 Ariz. 269, 272 (1976) (recognizing that an amended complaint relates back to the original complaint if "[i]t was based upon the conduct, transaction and occurrence set forth in the original pleading"). In this case, the court of appeals relied

upon *Barnes* for its conclusion that *Count IV* and *Counts I–III* alleged separate transactions. *Ariz. Bd. of Regents*, 251 Ariz. at 189 ¶ 27. But, as we did in *Marshall*, we distinguish *Barnes* on its facts because the original and amended complaints alleged separate transactions—the sale of stock to plaintiff and a false statement in a registration form. *Marshall*, 131 Ariz. at 383 ("[T]here was no relation back [in *Barnes*] where the original complaint alleged fraud in the sale of stock to plaintiff and the amended complaint alleged fraud in defendant's application for a registration exemption."). Thus, because all of the counts here arise from the Omni Deal, *Count IV* relates back to the date of the original complaint as if it was filed on that date.

## CONCLUSION

¶**35**　　For the reasons set forth above, we vacate the court of appeals' opinion, affirm the tax court's dismissal of *Counts I* and *II*, reverse the dismissal of *Count III*, reverse the tax court's grant of summary judgment on *Count IV*, reverse the tax court's award of attorney fees as premature, and remand for further proceedings consistent with this opinion.